1   Van-Dzung V. Nguyen (CSB 222832)
       vnguyen@crowell.com
2   CROWELL & MORING LLP
    3 Park Plaza, 20th Floor
3   Irvine, CA  92614
    Telephone:   (949)263-8400
4   Facsimile:   (949) 263-8414

5   Kathleen Taylor Sooy
       ksooy@crowell.com
6   CROWELL & MORING LLP
    1001 Pennsylvania Avenue, NW
7   Washington, DC  20004
    Telephone:  (202) 624-2500
8   Facsimile:  (202) 628-5116

9   Counsel for AT&T Mobility LLC

10

11                   UNITED STATES DISTRICT COURT

12                 CENTRAL DISTRICT OF CALIFORNIA

13                       SOUTHERN DIVISION

14   CHRISTOPHER BENSBERG, on          Case No.  **SACV10 -1146 CJC (RCx)**
     behalf of himself and all others
15   similarly situated,                **CLASS ACTION**

16          Plaintiff,                  **NOTICE OF REMOVAL OF
                                        DEFENDANT AT&T MOBILITY
17          v.                          LLC**

18   APPLE, INC., AT&T MOBILITY         Complaint Filed:  June 25, 2010
     LLC, and DOES 1 through 100,
19   inclusive,

20          Defendants.

21

22

23

24

25

26

27

28

## NOTICE OF REMOVAL OF DEFENDANT
## AT&T MOBILITY LLC

TO THE CLERK OF THE ABOVE-ENTITLED COURT

PLEASE TAKE NOTICE THAT Defendant AT&T Mobility LLC ("ATTM"), pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446 and 1453, hereby removes the above-captioned putative class action from the Superior Court of California, County of Orange, to the United States District Court for the Central District of California. Pursuant to 28 U.S.C. § 1446(d), copies of this Notice of Removal are being served upon counsel for Plaintiff Christopher Bensberg ("Plaintiff"), as well as counsel for Defendant Apple Inc. (with ATTM, collectively, "Defendants"), and filed with the Clerk of the California Superior Court for the County of Orange, as an exhibit to a Notice of Removal to Federal Court. A copy of the Notice being filed in state court is attached (without exhibits) as Exhibit A.

### PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

1.      On June 25, 2010, Plaintiff filed a purported class action captioned *Bensberg v. Apple Inc. & AT&T Mobility LLC*, case number 30-2010-00384893-CU-BT-CXC, against Defendants in the California Superior Court for the County of Orange ("State Court Action").

2.      ATTM was served with the State Court Action Summons and Complaint on June 29, 2010. This notice is therefore timely pursuant to 28 U.S.C. § 1446(b). Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings and orders served upon ATTM in the State Court Action are attached to this Notice as Exhibit B.

3.      The California Superior Court for the County of Orange is located within the Central District of California. 28 U.S.C. § 84(c)(3). This Notice of Removal is therefore properly filed in this Court pursuant to 28 U.S.C. § 1441(a).

/ / /

/ / /

**NO JOINDER NECESSARY**

4.      No other Defendants are required to consent to this removal.  28 U.S.C. § 1453(b).

**ALLEGATIONS OF THE COMPLAINT**

5.      This action is a putative class action against Defendants on behalf of all California purchasers (the "California Class") and all national purchasers (the "Nationwide Class") of Apple's iPhone 4.  (Ex. B, Complaint, at ¶¶ 22-23.) Plaintiff alleges that Apple's iPhone 4 is defective because "when the iPhone 4 is held in a normal grip using the left hand, the phone suffers significant cellular signal degradation."  (*Id.* at ¶ 16.)

6.      Plaintiff seeks to represent a California class defined as "all persons who are citizens or residents of California and purchased an iPhone 4."  (*Id.* at ¶ 22.)  Plaintiff also seeks to represent a nationwide class defined as "all persons who purchased an iPhone 4 in the United States."  (*Id.*)  On behalf of Plaintiff and the putative classes, the Complaint attempts to state claims for:  (1) violation of California's Consumer Legal Remedies Act ("CLRA"), Civil Code § 1750 *et seq.*; (2) violation of California's Unfair Competition Law ("UCL"), Business & Professions Code § 17200 *et seq.*; (3) violation of California's False Advertising Law, Business & Professions Code § 17500 *et seq.*; (4) breach of implied warranty; and (5) breach of warranty under the Song-Beverly Act, Civil Code § 1790 *et seq.* (*Id.* at ¶¶ 30-54.)  The Complaint seeks compensatory damages, injunctive relief, restitution, attorneys' fees, and costs. (*Id.* at 12-13, Prayer for Relief.)

7.      ATTM disputes Plaintiff's allegations, believes the Complaint lacks merit, and denies that Plaintiff or the putative class members have been harmed in any way.[1]

---

[1] *See Key v. DSW Inc.*, 454 F. Supp. 2d 684, 691 (S.D. Ohio, 2006) ("[T]he fact that Defendant removed the case does not mean that Defendant concedes that Plaintiff has adequately alleged appropriate damages.").

## BASIS FOR REMOVAL

8.     This action is within the original jurisdiction of this Court, and removal is therefore proper under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which grants district courts original jurisdiction over putative class actions such as this one, in which the amount in controversy exceeds $5,000,000 and any member of the class of plaintiffs is a citizen of a State different from any defendant.  Additionally, to be removable, the putative class must consist of 100 or more members.  28 U.S.C. § 1332(d)(5).  As set forth below, this action satisfies each of the requirements of Section 1332(d)(2) for original jurisdiction under CAFA.  *See Lowdermilk v. United States Bank, N.A.*, 479 F.3d 994 (9th Cir. 2007).

9.     Covered Class Action.  This action meets the CAFA definition of a class action, which is "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure."  28 U.S.C. §§ 1332(d)(1)(B), 1453(a) & (b).

10.     Class Action Consisting of More than 100 Members.  The Complaint alleges "there are, *at the very least*, tens of thousands of class members."  (Ex. B, Complaint, at ¶ 24) (emphasis added.)  Accordingly, based on Plaintiff's allegation, the number of class members is greater than 100 persons for purposes of 28 U.S.C. § 1332(d)(5)(B).

11.     Diversity.  The required diversity of citizenship under CAFA is satisfied where, as here, "any member of a class of plaintiffs is a citizen of a state different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  Plaintiff alleges that ATTM is a Delaware corporation with its principal place of business in Atlanta, Georgia, and that Apple is a California corporation with its principal place of business in Cupertino, California.  (Ex. B, Complaint, at ¶ 2-3.)  Thus, for purposes of removal under CAFA, ATTM is a citizen of Delaware and Georgia, and Apple is a citizen of California.  *See* 28 U.S.C. § 1332(d)(10).  Plaintiff is a citizen of

1   California, and is therefore diverse from ATTM. (*See* Ex. B, Complaint, at ¶ 1.)

2        12.   Amount in Controversy.  Under CAFA, the claims of the individual

3   class members are aggregated to determine if the amount in controversy exceeds

4   the required "sum or value of $5,000,000, exclusive of interests and costs." 28

5   U.S.C. §§ 1332(d)(2), (d)(6).  The Complaint seeks, among other relief,

6   compensatory damages, restitution, attorneys' fees and costs.  (Ex. B, Complaint, at

7   12-13, Prayer for Relief.)  Without conceding any merit to the Complaint's

8   damages allegations or causes of action, the amount in controversy here satisfies

9   CAFA's jurisdictional threshold.

10        13.   Amount in Controversy – Compensatory Damages.  The amount in

11   controversy with respect to compensatory damages exceeds $5,000,000.  The

12   Complaint alleges that Plaintiff "suffered harm in that he spent . . . money acquiring

13   the new [iPhone 4] [and] entering into a new two-year contract with AT&T." (*Id.*

14   at ¶ 21.)  The Complaint further alleges that the size of the class would be

15   ascertainable by looking to Defendants' records.  (*Id.* at ¶ 24.)  The iPhone 4 is sold

16   through Apple retail stores as well as through ATTM's retail stores.  ATTM's

17   records reflect that since the iPhone 4 was launched in June 2010, ATTM has sold

18   a sufficient number of iPhone 4 units in California to exceed the jurisdictional limit

19   of $5,000,000.  (*See* Ex. C, Redacted Decl. of Brian Ireland of ATTM, at ¶ 4)

20   (unredacted version to be filed subject to Motion for Leave to File Under Seal filed

21   concurrently).  In addition, since the iPhone 4 was launched, ATTM has sold a

22   sufficient number if iPhone 4 units nationwide (excluding California) to exceed the

23   jurisdictional limit of $5,000,000.  (*Id.* at ¶ 5.)  Plaintiff alleges each purchaser is

24   entitled to the value of their iPhone 4 unit in damages, and therefore the amount in

25   controversy meets the $5 million requirement, even without considering the sales of

26   ATTM's service plans or Apple's additional sales of the iPhone 4.[2]  (*See id.*, at ¶¶

27        [2] ATTM is not in possession of Apple's sales records, and therefore cannot

28   provide any data regarding Apple's sales of iPhone 4 units through its own retail (Continued...)

1   4-6.)

2       14.   Moreover, Plaintiff's own pleadings reveal that the amount in

3   controversy exceeds $5 million.  Exhibits attached to the Complaint state that the

4   iPhone 4 costs between $199 and $299.  (Ex. B, Complaint, at Ex. A to Complaint,

5   "Apple Says To Hold iPhone 4 Differently to Fix Signal.")  According to Plaintiff,

6   therefore, the average price paid for the iPhone 4 is $249, easily surpassing the $5

7   million jurisdictional limit based on Plaintiff's alleged class of, at a minimum, over

8   20,000 purchasers.

9       15.   Thus, while ATTM disputes that it is liable to Plaintiff or any of the

10  putative class members, or that Plaintiff or the putative class members suffered any

11  injury or incurred any damages in any amount whatsoever, for purposes of

12  satisfying the jurisdictional prerequisites of CAFA, the amount in controversy

13  exceeds $5 million.

14      16.   <u>Amount in Controversy—Attorneys' Fees</u>.  Plaintiff also seeks an

15  award of attorneys' fees.  (*Id.* at p.12-13, Prayer for Relief.)  This amount is

16  likewise included in the amount in controversy calculation. *See Missouri State Life*

17  *Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933); *Kroske v. U.S. Bank Corp.*, 432 F.3d

18  976, 980 (9th Cir. 2005), *amended and rehearing denied at* 2006 U.S. App. LEXIS

19  3376 (9th Cir. 2006); *see also, e.g., Sanchez v. Walmart Stores, Inc.*, No. S-06-cv-

20  2573 DFL, 2007 U.S. Dist. LEXIS 33746, at * 6 (E.D. Cal., May 8, 2007)

21  (including attorneys' fees in amount in controversy calculation).

22      17.   <u>No CAFA Exclusions</u>.  The action does not fall within any exclusion

23  to removal jurisdiction recognized by 28 U.S.C. § 1332(d).  Accordingly, this

24  action is removable pursuant to CAFA, §§ 1332(d) and 1453(b).

25  / / /

26

27  stores.  Apple's sales data would further increase the amount in controversy over
    the jurisdictional minimum.

28

1

2          WHEREFORE, Defendant ATTM gives notice that the above-described

3    action pending against it in the Superior Court for the County of Orange is removed

4    to this Court.

5    Dated:        July 28, 2010

_____

6                                                    Van-Dzung V. Nguyen
                                                        vnguyen@crowell.com
7                                                    CROWELL & MORING LLP
                                                     3 Park Plaza, 20th Floor
8                                                    Irvine, CA 92614
                                                     Telephone:  (949) 263-8400
9                                                    Facsimile:  (949) 263-8414

10                                                  Kathleen Taylor Sooy
                                                        ksooy@crowell.com
11                                                  CROWELL & MORING LLP
                                                     1001 Pennsylvania Avenue, NW
12                                                  Washington, DC  20004
                                                     Telephone:  (202) 624-2500
13                                                  Facsimile: (202) 628-5116

14                                                  Counsel for AT&T Mobility LLC

15

16

17

18

19

20

21

22

23

24

25

26    010702\0000031\12537085.1
       DC12537085.1

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

NOTICE OF REMOVAL OF DEFENDANT AT&T
MOBILITY LLC

# EXHIBIT A

1    Van-Dzung V. Nguyen (CSB 222832)
     vnguyen@crowell.com
2    CROWELL & MORING LLP
     3 Park Plaza, 20th Floor
3    Irvine, CA 92614
     Telephone: (949)263-8400
4    Facsimile:  (949) 263-8414

5

6    Kathleen Taylor Sooy
     ksooy@crowell.com
7    CROWELL & MORING LLP
     1001 Pennsylvania Avenue, NW
8    Washington, DC 20004
     Telephone: (202) 624-2500
9    Facsimile: (202) 628-5116

10    Counsel for AT&T Mobility LLC

11          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12          **COUNTY OF ORANGE, CIVIL COMPLEX DIVISION**

13

14

| | |
|---|---|
| CHRISTOPHER BENSBERG, on behalf of himself and all others similarly situated, | Case No.  30-2010-00384893-CU-BT-CXC |
| Plaintiff, | **CLASS ACTION** |
| v. | **NOTICE OF DEFENDANT AT&T MOBILITY LLC TO ADVERSE PARTY AND CLERK OF SUPERIOR COURT OF REMOVAL TO FEDERAL COURT** |
| APPLE, INC., AT&T MOBILITY, LLC, and DOES 1 through 100, inclusive, | |
| Defendants. | Complaint Filed:    June 25, 2010 |

15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

7

1        TO PLAINTIFF, HIS COUNSEL OF RECORD, AND THE CLERK OF THE

2   SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE:

3        PLEASE TAKE NOTICE THAT on July 29, 2010, Defendant AT&T Mobility LLC

4   ("ATTM") filed a Notice of Removal of this action in the United States District Court for the

5   Central District of California.  A true and correct copy of said Notice of Removal attached hereto

6   as Exhibit A and is served and filed herewith.

7        PLEASE TAKE FURTHER NOTICE that, pursuant to 28 U.S.C. § 1446, the filing of

8   said Notice affects the removal of this action to the federal court, and this Court is directed to

9   "proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d).

10

11   Dated:  July 29, 2010

                                   Van-Dzung V. Nguyen

12                                  vnguyen@crowell.com

                                 CROWELL & MORING LLP

13                                  3 Park Plaza, 20th Floor

                                 Irvine, CA  92614

14                                  Telephone: (949)263-8400

                                 Facsimile:  (949) 263-8414

15

                                 Kathleen Taylor Sooy

16                                  ksooy@crowell.com

                                 CROWELL & MORING LLP

17                                  1001 Pennsylvania Avenue, NW

                                 Washington, DC  20004

18                                  Telephone:  (202) 624-2500

                                 Facsimile: (202) 628-5116

19                                  Counsel for AT&T Mobility LLC

20

010702\0000031\12537088.1

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW
                           -1-                NOTICE OF AT&T MOBILITY LLC
                                          OF REMOVAL TO FEDERAL COURT

<p style="text-align:center;"><u>PROOF OF SERVICE</u></p>

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and **not a party to this action.**  I am employed in the County of Orange, State of California.  My business address is 3 Park Plaza, 20th Floor, Irvine, California 92614-8505.

On July 29, 2010, I served true copies of the following document(s) described as

<p style="text-align:center;"><strong>NOTICE OF DEFENDANT AT&T MOBILITY LLC TO ADVERSE PARTY AND CLERK OF SUPERIOR COURT OF REMOVAL TO FEDERAL COURT</strong></p>

on the interested parties in this action as follows:

<p style="text-align:center;"><strong>SEE ATTACHED SERVICE LIST</strong></p>

**BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with Crowell & Moring LLP's practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY ELECTRONIC TRANSMISSION:**  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from the court's electronic filing system to the persons listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 29, 2010, at Irvine, California.

_Patricia Rizer_
Patricia Rizer

**SERVICE LIST**
**30-2010-00384893-CU-BT-CXC**

| | |
|---|---|
| Michael Louis Kelly<br>Behram V. Parekh<br>Heather M. Peterson<br>KIRTLAND & PACKARD LLP<br>2361 Rosecrans Avenue, Fourth Floor<br>El Segundo, California 90245<br>Telephone:     (310) 536-1000<br>Facsimile:     (310) 536-1001<br>E-mail:     mlk@kirtlandpackard.com<br>            bvp@kirtlandpackard.com<br>            hmp@kirtlandpackard.com | Attorneys for Plaintiff Christopher Bensberg |
| Penelope A. Preovolos<br>Andrew David Muhlbach<br>Heather A. Moser<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, California 94105-2482<br>Telephone:     (415) 268-7000<br>Facsimile:     (415) 268-7522<br>E-mail:     PPreovolos@mofo.com<br>            AMuhlbach@mofo.com<br>            HMoser@mofo.com | Attorneys for Defendant Apple Inc. |

DC12537088.1

AT&T MOBILITY, LLC'S NOTICE OF REMOVAL

10

# EXHIBIT B

1    KIRTLAND & PACKARD LLP
    Michael Louis Kelly - State Bar No. 82063
2    Behram V. Parekh - State Bar No. 180361
    Heather M. Peterson - State Bar No. 261303
3    mlk@kirtlandpackard.com
    bvp@kirtlandpackard.com
4    hmp@kirtlandpackard.com
    2361 Rosecrans Avenue, Fourth Floor
5    El Segundo, California 90245
    Telephone: (310) 536-1000
6    Facsimile: (310) 536-1001

7    *Counsel for Plaintiff Christopher Bensberg,*
    *on behalf of himself and all others similarly situated*

8

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**06/25/2010** at 08:48:06 AM
Clerk of the Superior Court
By Maarit H Nordman,Deputy Clerk

9         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
                 **COUNTY OF ORANGE**

10

11 | CHRISTOPHER BENSBERG on behalf of himself and all others similarly situated, | Case No. 30-2010-00384893-CU-BT-CXC |
|---|---|
| | **CLASS ACTION**   Judge Ronald L. Bauer |

Plaintiff,

**COMPLAINT FOR:**

v.

   **1. VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA"), Civil Code §1750 *et seq.*;**

APPLE INC., AT&T MOBILITY LLC, and DOES 1 - 100, inclusive,

Defendants.

   **2. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAWS ("UCL"); Bus. & Prof. Code §17200 *et seq.*;**

   **3. VIOLATION OF THE FALSE ADVERTISING LAWS ("UCL"); Bus. & Prof. Code §17500 *et seq.*;**

   **4. BREACH OF IMPLIED WARRANTY**

   **5. BREACH OF WARRANTY (SONG-BEVERLY ACT), Civil Code §1790 *et seq.*;**

   **DEMAND FOR JURY TRIAL**

COMES NOW plaintiff Christopher Bensberg, on behalf of himself and all others similarly situated, and brings this action against Defendants Apple Inc., AT&T Mobility LLC, and Does 1 - 100 inclusive, and alleges on information and belief through investigation of counsel (except for those allegations pertaining directly to Plaintiff himself) as follows:

## PARTIES

1.  Plaintiff Christopher Bensberg ("Plaintiff") is an individual residing at all times mentioned herein in the County of Orange, State of California.

2.  Defendant Apple Inc. ("Apple") is a California corporation with its headquarters and principle place of business in Cupertino, California.

3.  Defendant AT&T Mobility LLC ("AT&T") is a Delaware corporation with its principle place of business in Atlanta, Georgia.  AT&T maintains extensive contacts with the State of California, including significant business operations in the billions of dollars, tens of thousands of employees, and hundreds of retail stores.

4.  The true names and capacities, whether individual, corporate, associate, representative or otherwise, of the Defendants identified herein as Does 1 - 100 inclusive are unknown to Plaintiff, who therefore sues these Defendants by said fictitious names.  Plaintiff will amend this complaint to allege the true names and capacities of Does 1 - 100 when they have been ascertained.  Does 1 -100 are in some manner legally responsible for the wrongs and injuries alleged in this complaint.  Apple, AT&T, and Does 1 - 100 are collectively referred to herein as "Defendants."

5.  The acts alleged in this complaint that have been committed by Defendants were authorized, ordered or done by their officers, agents, employees or representatives while actively engaged in the management of the Defendants' businesses.

## JURISDICTION VENUE

6.  This action asserts claims under the California Legal Remedies Act, Civil Code §§ 1750 *et seq.*, the California Unfair Competition Laws,  Bus. & Prof. Code §§ 17200 *et seq.*, the

1 | California False Advertising Act, Bus. & Prof. Code §§ 17500 *et seq.*, the Magnuson-Moss
2 | Consumer Warranty Act, 15 U.S.C. §§ 2301 *et seq*, the California Song-Beverly Consumer
3 | Warranty Act, Civil Code §§ 1750 *et seq.*, and similar common and statutory law in effect
4 | nationwide.  This Court has jurisdiction over this action under Article 6 of the California
5 | Constitution and the California Code of Civil Procedure § 410.10.

6 | 7.  This Court has jurisdiction over Apple because Apple is a California corporation
7 | with its principle place of business in the state.  As such, the State of California has a paramount
8 | interest in preventing the unlawful, unfair and fraudulent conduct and/or deceptive practices as
9 | alleged herein from occurring in and/or emanating from California.

10 | 8.  This Court has jurisdiction over AT&T because even though AT&T is a Delaware
11 | corporation headquartered in Georgia, it conducts substantial business in California, and the
12 | conduct alleged herein, namely, the advertising and sale of the iPhone 4, occurred in and/or
13 | emanated from California due to AT&T's contracts with Apple.  Further, the State of California
14 | has a paramount interest in preventing the unlawful, unfair and fraudulent conduct and/or
15 | deceptive practices as alleged herein from occurring in and/or emanating from California.

16 | 9.  Venue is proper in this Court under the Consumer Legal Remedies Act, Civil Code
17 | § 1780 (d) because, among other things, some of the common acts and transactions described
18 | herein occurred within the County, and Defendants all conduct substantial business within the
19 | County.

20 | **FACTUAL ALLEGATIONS**

21 | 10.  This action concerns the purchase by Plaintiff of an iPhone 4 manufactured by
22 | Apple, and sold at retail through Apple, AT&T, and a limited number of other retailers.  The
23 | iPhone 4 is available in the United States exclusively for use with an AT&T cellular service
24 | account.  The iPhone 4 sold in the United States is locked to AT&T as a carrier and cannot be
25 | used with any other cellular service provider.

26 | 11.  Apple announced the iPhone 4 at its Word Wide Developers Conference
27 | ("WWDC") on June 7, 2010 during the keynote address by Apple's CEO, Steve Jobs ("Jobs").

28 |

KIRTLAND & PACKARD LLP

12. One of the key points emphasized by Jobs was the new design of the iPhone 4, along with the "brilliant engineering" of its antenna system and its "extraordinary build quality."

13. More specifically, Jobs stated the following regarding the antenna system during the keynote:

> Now, because there have been a few photos around, people have asked, what's this? What are these lines? These don't seem like Apple. Well, it turns out, there's not just one of them, there's three of them. And they are part of the structure of the phone — the stainless steel band is the structure of the phone. These is some brilliant engineering — we use that stainless steel band as part of the antenna system. It's got integrated antennas right in the structure of the phone — it's never been done before and it's really cool engineering. Stainless steel for strength. Glass on the front and back. Integrated antennas, and extraordinary build quality.

14. The reality is, however, that this "brilliant" antenna system suffers from a significant defect.

15. Plaintiff purchased iPhone 4 on the date of its release.

16. After using the iPhone 4, Plaintiff realized that the product was in fact defective and Apple has now acknowledged this defect. As is now being reported on various internet websites and blogs, when the iPhone 4 is held in a normal grip using the left hand, the phone suffers significant cellular signal degradation. Some reports have attributed this to the "line" on the left side of the phone separating the WiFi and Cellular antennas being shorted by being in contact with the user's skin, although this explanation has not been confirmed by Apple. (See Exhibit A attached hereto)

17. Although this is a significant defect, leading to a degradation and loss of the iPhone 4's primary functionality, namely, use as a cellular telephone, according to internet reports when a user e-mailed Jobs asking "What's going to be done about the signal dropping issue. Is it software or hardware?" Jobs wrote back stating "Non issue. Just avoid holding it in that way." (See Ex. A)

18. The same internet reports state that using with iPhone 4 in conjunction with Apple's "bumper," which is sold separately for $29, completely eliminates this issue. (See Ex. A).

14

1        19.    Apple's apparent official response to these reports states: "Gripping any phone will

2    result in some attenuation of its antenna performance with certain places being worse than others

3    depending on the placement of the antennas. This is a fact of life for every wireless phone. If you

4    ever experience this on your iPhone 4, avoid gripping it in the lower left corner in a way that

5    covers both sides of the black strip in the metal band, or simply use one of many available cases"

6    (See Ex. A)

7        20.    At no point prior to purchasing the iPhone 4 was Plaintiff informed by any

8    Defendant that in order to use his phone without suffering significant signal degradation he would

9    either 1) have to hold his phone in an unnatural position or 2) purchase Apple's "bumper" which

10   covers that location.

11       21.    Plaintiff has suffered damages in that he now owns a phone for which he is

12   required to purchase a "bumper" or hold the phone at an unnatural position in order to use it

13   without significant signal degradation.  Further, Plaintiff has further suffered damages in that he

14   has spent time, effort and money in acquiring the new phone, entering into a new two-year

15   contract with AT&T, and transferring data and applications to his new phone, only to be now

16   informed that it is defective.

17                  **CLASS DEFINITIONS AND CLASS ALLEGATIONS**

18       22.    Plaintiff brings this action on behalf of himself, on behalf of all others similarly

19   situated, and on behalf of the general public, and as members of the class or subclasses

20   (collectively referred hereafter as the "Class") defined as follows:

21             (1) <u>California Class</u>: The class that Plaintiff seeks to represent ("the California

22             Class") consists of all persons who are citizens or residents of California and

23             purchased an iPhone 4.  Excluded from the class are Defendants, any parent,

24             subsidiary, affiliate, or controlled person of Defendants, as well as the officers and

25             directors of Defendants, and the immediate family member of any such person.

26             Also excluded is any judge who may preside over this case, and such judge's

27             immediate family and courtroom staff.

28

1         (2) <u>Nationwide Class</u>: The class that Plaintiff seeks to represent ("the Nationwide

2         Class") is defined to include all persons who purchased an iPhone 4 in the United

3         States. Excluded from the class are Defendants, any parent, subsidiary, affiliate, or

4         controlled person of Defendants, as well as the officers and directors of

5         Defendants, and the immediate family member of any such person. Also excluded

6         is any judge who may preside over this case, and such judge's immediate family

7         and courtroom staff.

8     23.     This action has been brought and may be properly maintained as a class action

9 pursuant to the provisions of California Code of Civil Procedure, California Civil Code, California

10 Rules of Court, and case law thereunder, to which the California trial courts have been directed by

11 the California Supreme Court for guidance.

12     24.     **Numerosity of the Class**: Members of the Class are so numerous that their

13 individual joinder is impracticable. Plaintiff estimates there are, at the very least, tens of

14 thousands of class members. The precise number of class members and their addresses are

15 unknown to Plaintiff, but can be obtained from the Defendants' records. Class members may be

16 notified of the pendency of this action by first-class or electronic mail, supplemented (if necessary

17 or appropriate by the Court) by published notice.

18     25.     **<u>Existence of Substantial Similarity or Predominance of Common Questions of</u>**

19 **<u>Fact and Law</u>**: Common questions of law and fact exist as to all members of the Class. The

20 questions are substantially similar or predominate over any questions affecting only individual

21 class members. These common legal and factual questions include but are not limited to:

22         (a) Whether Defendants had a duty disclose the product defect;

23         (b) Whether representations made by Defendants were false or had a tendency to

24         deceive;

25         (c) Whether the product is, indeed, defective;

26         (d) Whether Defendants' conduct violates the CLRA or other laws;

27         (e) Whether Defendants' conduct is "unfair" under Section 17200;

28         (f) Whether Defendants' advertising is misleading;

KIRTLAND & PACKARD LLP
LAW OFFICES



1    (g) Whether Defendants breached their implied warranty;

2    (h) Whether Defendants' knew of the product's defect at the time it advertised and

3    sold the product;

4    (i) Whether Defendants violated the Song-Beverly Act;

5    (j) Whether, as a result of Defendants' misconduct, Plaintiff and the Class are

6    entitled to damages, restitution, equitable relief and other relief, and the amount

7    and nature of such relief.

8        26.    **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class

9    because Plaintiff purchased a produce which did not function as advertised nor as reasonably

10   expected by Plaintiff. Plaintiff and the Class members sustained the same types of damages and

11   losses.

12       27.    **Adequacy**: Plaintiff is an adequate representative of the Class because his interests

13   do not conflict with the interests of the members of the Class Plaintiff seeks to represent. Plaintiff

14   has retained counsel competent and experienced in complex class action litigation and Plaintiff

15   intends to prosecute the action vigorously. The interests of members of the Class will be fairly

16   and adequately protected by Plaintiff and his counsel.

17       28.    **Superiority and Substantial Benefit**: The class action is superior to other

18   available means for the fair and efficient adjudication of Plaintiff's and Class members' claims.

19   The damages suffered by each individual Class member may be limited. Damages of such

20   magnitude are small given the burden and expense of individual prosecution of the litigation

21   necessitated by Defendants' conduct. Further, if would be virtually impossible for the members of

22   the Class individually to redress the wrongs done to them. Even if members of the Class

23   themselves could afford such individual litigation, the court system could night. Individualized

24   litigation increases the delay and expense to all parties and the court system. By contrast, the class

25   action device presents far fewer management difficulties, and provides the benefits of a single

26   adjudication, economy of scale, and comprehensive supervision by a single court.

27

28

KIRTLAND & PACKARD LLP
LAW OFFICES

29.   In the alternative, the Class may be certified because:

(a)   the prosecution of separate actions by individual members of the Class could create a risk of inconsistent or varying adjudication with respect to individual class members which would establish incompatible standards of conduct for Defendants;

(b)   the prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to them, which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impeded their ability to protect their interests; and

(c)   Defendants have acted or refused to act on grounds generally applicable to the Class and or the general public, thereby making appropriate final relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

## AGAINST ALL DEFENDANTS:

## VIOLATION OF CALIFORNIA'S *CONSUMERS LEGAL REMEDIES ACT*

30.   Plaintiff hereby incorporates, as if set forth in full, each and every preceding and subsequent allegation in this complaint.

31.   The Defendants' acts and omissions violate the following portions of the California *Consumers Legal Remedies Act*:

a.   in violation of Civil Code §§ 1770(a)(2) and/or §§ 1770(a)(3), Defendants have failed to disclose the existence of the product defect and Apple has failed to put any sort of warning or disclaimer on its packaging or its website of the existence of the defect;

b.   in violation of Civil Code §§ 1770(a)(5), Defendants have represented that its products offered on their websites have certain characteristics and/or benefits, when in fact they do not;

c.    in violation of Civil Code §§ 1770(a)(7), Defendants have represented that the products offered on their websites are of a particular standard when they actually are not;

d.    in violation of Civil Code §§ 1770(a)(9), Defendants have advertised its products offered on their websites with the intent not to sell them as advertised;

e.    in violation of Civil Code §§ 1770(a)(14), Defendants have represented that a transaction to purchase one of their products offered on its website involves certain rights, remedies, or obligations when in fact, it does not, or it is prohibited by law; and

f.    in violation of Civil Code §§ 1770(a)(16), Defendants have represented that the subject of a transaction to purchase one of its products offered for sale has been supplied in accordance with a previous representation when it has not.

32.    Plaintiff and the members of the Class risk irreparable injury as a result of the Defendants' acts and omissions in violation of the CLRA and these violations present a continuing risk to the class and members of the public.

33.    Pursuant to Section 1782 of the CLRA, Plaintiff intends to notify Defendants in writing of the particular violations of Section 1770 of the CLRA (the "Notice Letter"). If Defendants fail to comply with Plaintiff's demands within thirty days of receipt of the Notice Letter, pursuant to Section 1782 of the CLRA, Plaintiff will amend this Complaint to further request damages under the CLRA.

34.    Plaintiff has suffered economic damage as a result of Defendants' violations of *Civil Code* § 1770.

//

//

//

-9-

COMPLAINT

19

<div align="center">

**SECOND CAUSE OF ACTION**

**AGAINST ALL DEFENDANTS:**

**VIOLATION OF THE UNFAIR COMPETITION LAWS**

</div>

35.     Plaintiff hereby incorporates, as if set forth in full, each and every preceding and subsequent allegation in this complaint.

36.     California *Business and Professions Code* § 17200 *et seq.*, also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising." Defendants violated Section 17200 *et seq.* by representing on its website that the product being purchased was

37.     As a direct and proximate result of Defendants' illegal business practices, Plaintiff and the members of the Class have suffered injury and have lost money or property.

38.     The illegal business practices described herein present a continuing threat to Plaintiff, the Class and members of the public in that Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendants' conduct will continue to cause irreparable injury to Plaintiff and the Class unless enjoined or restrained.

<div align="center">

**THIRD CAUSE OF ACTION**

**AGAINST ALL DEFENDANTS:**

**VIOLATION OF THE FALSE ADVERTISING LAWS**

</div>

39.     Plaintiff hereby incorporates, as if set forth in full, each and every preceding and subsequent allegation in this complaint.

40.     *Business and Professions Code* § 17500 provides that "[i]t is unlawful for any ... corporation ... with intent ... to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means

<div align="center">

-10-

</div>

LAW OFFICES
KIRTLAND & PACKARD LLP

1  whatever, including over the Internet, any statement ... which is untrue or misleading, and which is

2  known, or which by the exercise of reasonable care should be known, to be untrue or

3  misleading...."

4      41.    As a direct and proximate result of Defendants' misleading advertising, Plaintiffs

5  and the members of the Class have suffered injury in fact and have lost money or property.

6      42.    The misleading advertising described herein presents a continuing threat to

7  Plaintiff and the Class in that Defendants persist and continue to engage in these practices, and

8  will not cease doing so unless and until forced to do so by this Court.  Defendants' conduct will

9  continue to cause irreparable injury to Plaintiff and the class unless enjoined or restrained.

10

11                    FOURTH CAUSE OF ACTION

12                    AGAINST ALL DEFENDANTS:

13                    BREACH OF IMPLIED WARRANTY

14      43.    Plaintiff hereby incorporates, as if set forth in full, each and every preceding and

15  subsequent allegation in this complaint.

16      44.    Defendants impliedly warrant that the products being sold will function properly

17  for its intended purpose, mainly, for use as a cellular telephone.

18      45.    Defendants breached this implied warranty when Defendants manufactured and

19  sold to the public a cellular telephone which experiences significantly degraded signal strength

20  when being held normally and without a "bumper."

21      46.    This implied warranty was also breached by Defendants because they failed to

22  warn customers in any way that such behavior could occur and that Plaintiff and the members of

23  the putative class would be required to buy additional products, such as the "bumper," in order to

24  cure such defect.

25      47.    Plaintiff, and every member of the classes alleged herein, have been similarly

26  damaged as a result of this breach of warranty.

27  //

28  //

LAW OFFICES
KIRTLAND & PACKARD LLP

-11-
COMPLAINT

## FIFTH CAUSE OF ACTION

## AGAINST ALL DEFENDANTS:

## BREACH OF THE SONG-BEVERLY ACT

48.     Plaintiff hereby incorporates, as if set forth in full, each and every preceding and subsequent allegation in this complaint.

49.     The Song-Beverly Act, California Civil Code § 1790 *et seq*. applies to consumer goods for which there is an express warranty.

50.     Defendants' statements made in ths advertising, marketing, and sales of their products, and by operation of law, constitute implied warranties that such items are merchantable and fit for their intended purpose.

51.     Defendants breached these express and implied warranties by selling products which were defective for their intended purpose and required the subsequent purchase of an additional product, such as a "bumper," to make them fit for their intended purpose..

52.     Further, Defendants have breached their express and implied warranties by refusing to correct or repair the defects on products they manufactured or sold.

53.     As a result of Defendants' breach of warranties as set forth above, Plaintiff and members of the class have suffered damages in an amount to be determined at trial, including but not limited to the cost of having to purchase a "bumper" or similar product.

54.     Pursuant to the provisions of California Civil Code § 1794, Plaintiff and the Class are entitled to damages plus interest thereon, recision, restitution and other legal and appropriate equitable relief, including an order enjoining Defendants from the unlawful practices described herein, as well as recovery of attorneys' fees and costs of litigation.

## PRAYER FOR RELIEF

WHEREFORE, on behalf of himself and all others similarly situated, Plaintiff prays for the following relief:

1.     An order certifying this action as a Plaintiff class action, as set forth herein above;

2.     For compensatory damages as permitted by law;

3.     For restitution;

22

4.   For preliminary and permanent injunctive relief prohibiting Defendants from continuing the wrongful practices alleged in the complaint;

5.   For preliminary and permanent injunctive relief requiring Defendants to repair and/or replace the products;

6.   For costs and attorneys' fees as permitted by law;

7.   For such other and further relief as the Court may deem proper.

DATED: June 25, 2010

KIRTLAND & PACKARD LLP

By: _____
MICHAEL LOUIS KELLY

*Counsel for Plaintiff and all others similarly situated*

LAW OFFICES
KIRTLAND & PACKARD LLP

-13-
COMPLAINT

23

1 | **DEMAND FOR JURY TRIAL**

2 | Plaintiff hereby demands a trial by jury for all causes of actions so triable.

3 |

4 | DATED: June 25, 2010          KIRTLAND & PACKARD LLP

5 |

6 | By: _____

7 | MICHAEL LOUIS KELLY

8 | *Counsel for Plaintiff and all others similarly situated*

9 |

10 |

*(KIRTLAND & PACKARD LLP — LAW OFFICES, side margin)*

-14-
COMPLAINT

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
KIRTLAND & PACKARD LLP

# EXHIBIT A

COMPLAINT



# Jobs on iPhone 4 antenna: "avoid holding it in this way"

By Chris Foresman | Last updated about 14 hours ago

Earlier we reported on the widely experienced phenomenon of the iPhone 4 dropping 3G signal when gripped in the left hand. The problem is caused when the skin bridges the left and bottom antennas that also happen to be the device's stainless steel outer bezel. We asked Apple if it was aware of the issue, and on a lark copied CEO Steve Jobs since the flaw contradicted his statements about the "brilliant" antenna design during WWDC.

Jobs responded to our question this evening, in his usual terse manner. "All phones have sensitive areas," Jobs wrote. "Just avoid holding it in this way."

TUAW reader Craig Brockman was able to get a more detailed response, which Engadget reports is Apple's official statement on the issue: "Gripping any phone will result in some attenuation of its antenna performance, with certain places being worse than others depending on the placement of the antennas. This is a fact of life for every wireless phone," Jobs wrote. "If you ever experience this on your iPhone 4, avoid gripping it in the lower left corner in a way that covers both sides of the black strip in the metal band, or simply use one of many available cases."

So, it appears that our worry that Apple's iPhone 4 bumpers would be a recommended fix was founded after all.

What Jobs and Apple are saying about all phones being affected by this issue is true to some degree. Your hand can attenuate the signal to any radio antenna—try playing with the antenna of a portable AM/FM radio, for instance. Spencer Webb, an antenna engineer with Antennasys Inc, explained in a blog post that the placement of antennas in mobile devices is predicated partly on FCC and carrier testing requirements, so Apple's design isn't entirely out of the ordinary. Issues of signal degradation similar to that of the iPhone 4 have also been reported with the iPhone 3G and 3GS, as well as Google's Nexus 1.

One inconsistency is that numerous examples of using the iPhone 4, including Jobs' own WWDC demo, have shown users gripping the iPhone 4 in the exact manner that triggers the issue. Macintouch reader Saam G said that Apple Support confirmed the issue, blaming "a missing protective coating on some of the parts," so there may be more to this issue than what Jobs is admitting.

26

# Bloomberg
# Businessweek   Friday June 25, 2010

Available on the iPad

# Apple Says to Hold IPhone 4 Differently to Fix Signal

June 25, 2010, 1:14 PM EDT

(Adds user's comment in sixth paragraph.)

By Adam Satariano and Crayton Harrison

June 25 (Bloomberg) — Apple Inc. responded to complaints about reception on its new iPhone 4 by telling customers they should hold the device differently.

"Gripping any mobile phone will result in some attenuation of its antenna performance, with certain places being worse than others depending on the placement of the antennas," Apple said today in an e-mailed statement. "If you ever experience this on your iPhone 4, avoid gripping it in the lower left corner in a way that covers both sides of the black strip in the metal band, or simply use one of many available cases."

Yesterday's introduction of the iPhone 4 was marred by criticism that signal strength diminishes when users cover the bottom-left corners with their palms. The iPhone, which first debuted in 2007, has become Apple's top-selling product. It accounted for 40 percent of sales last quarter.

Chief Executive Officer Steve Jobs added a high-definition video camera, multitasking and video calling to the iPhone 4 to fend off competition from phones running Google Inc.'s Android operating system. It also has a stainless-steel band that's designed to improve network reception.

Customers have posted videos on the Internet demonstrating trouble with the iPhone 4's new antenna. Users experiencing the problem expressed disappointment with Apple's response.

'Really Awful'

"I'm an Apple person going back a long time and have spent a small fortune on Apple stuff over the last few years," said Patrick Coleman, 58, a senior systems administrator from Rockville, Maryland, who purchased two iPhone 4s. "It's really awful when Jobs has this kind of attitude."

Shaw Wu, an analyst at Kaufman Bros. LP in San Francisco, doesn't expect the antenna problem to lead to a product recall.

"Most users have a case anyway to protect their iPhone," he said in a report. He recommends buying Apple stock. "In the worst case, Apple provides a discount on the $29 iPhone 4 bumper case or includes one for free with an iPhone 4 purchase. Either way, we do not think this would have a material impact on our forecasts."

David Carey, vice president of technical intelligence at UBM TechInsights, an Austin, Texas-based company that studies the engineering of electronic devices, said it's not clear whether the antenna problem can be fixed with a software update or if it's more structural.

Software Solution?

"There is a point where software can't dig you out of a hole," he said. Still, given the phone's rigorous testing process, "it would strike me as surprising that they would have a permanent problem on their hands," Carey said.

The antenna matter didn't stop analysts from increasing their projections. Yair Reiner, an analyst at Oppenheimer & Co., said Apple probably sold 1.5 million iPhone 4s yesterday and said the company's stock may reach $345 a share.

"Apple continues to capture the attention and catalyze the passions of the American consumer in an unprecedented way," Reiner said.

Apple fell $1.28 to $267.72 at 1:08 p.m. New York time in Nasdaq Stock Market trading. The shares had gained 28 percent this year before today.

The company said this week it's delaying the release of white iPhone 4 models until the second half of July because of unexpected manufacturing challenges. Jobs unveiled the phone on June 7.

Android Phones

Apple, based in Cupertino, California, is facing increased competition from Android phone makers, such as HTC Corp., which rely on Google's operating system. There are some 60 Android- based mobile phones.

In the U.S., a 16-gigabyte model of the iPhone 4 costs $199, and a 32-gigabyte model is priced at $299. AT&T Inc., the exclusive U.S. carrier for the iPhone, said this month it will end unlimited data plans, an effort to manage the surge in demand caused by devices like the iPhone. The carrier has been criticized for dropped calls.

Apple may sell more than 10 million iPhones in the quarter ending in September, said Colin Gillis, an analyst at BGC Partners in New York.

--With assistance from Arik Hesseldahl in New York. Editors: Ville Heiskanen, Tom Giles

To contact the reporter on this story: Adam Satariano in San Francisco at asatariano1@bloomberg.net; Crayton Harrison in New York at tharrison5@bloomberg.net

To contact the editor responsible for this story: Tom Giles at tgiles5@bloomberg.net; Peter Elstrom at pelstrom@bloomberg.net



About | Advertising | EDGE Programs | Reprints | Terms of Use | Disclaimer | Privacy Notice | Ethics Code | Contact Us | Site Map
©2010 BLOOMBERG L.P. ALL RIGHTS RESERVED

## Steve Jobs Describes iPhone 4 Signal Strength as a 'Non Issue'

Thursday June 24, 2010 08:18 PM EST
Written by arn



Steve Jobs holding iPhone 4 in problematic way during WWDC keynote

MacRumors forum user samcraig emailed Steve Jobs about the low signal issue while holding the new iPhone 4 in a specific way. The potential issue has been generating a lot of discussion. Samcraig emailed Steve Jobs:

*Question - What's going to be done about the signal dropping issue. Is it software or hardware?*

To which, Jobs replied with a typically short response:

*Non issue. Just avoid holding it in that way.*

In a followup email, Jobs then expanded with this explanation:

*Gripping any phone will result in some attenuation of its antenna performance, with certain places being worse than others depending on the placement of the antennas. This is a fact of life for every wireless phone. If you ever experience this on your iPhone 4, avoid gripping it in the lower left corner in a way that covers both sides of the black strip in the metal band, or simply use one of many available cases.*

Steve Jobs has been known to respond to emails and we were able to log into Samcraig's email account to verify the authenticity of the emails, so we believe these are real.

**Update**: This has been confirmed as an official statement from Apple.

## iPhone 4 Signal Strength Indicator Issue Alleviated by Use of Bumper or Case
Thursday June 24, 2010 12:20 PM EST; Category: iPhone
Written by Eric Slivka

Quite a few users have reported experiencing an issue with cellular signals appearing to degrade when holding the lower left portion of their iPhone 4s. While not all users have been able to reproduce the problem, it does seem to be fairly widespread, and can be easily visualized as users watch their bars indicating signal strength drop all the way down over a period of a few seconds while the lower left portion of the device is cupped in the hand.

In his iPhone 4 review for *The Wall Street Journal*, Walt Mossberg did note the device's tendency to show a lower number of signal strength bars than the iPhone 3GS, but that calls did continue to go through and Apple reported that the issue is simply a software issue with the display of the bars rather than an actual signal strength issue.

The cupping issue, however, may be more significant than just a software presentation issue, as several users have reported dropping calls as they place their hand over the lower left portion of the phone.

One user has posted a YouTube video demonstrating the issue and the use of a slide-on iPhone 3GS case to eliminate it.

We have confirmed that Apple's bumper case also appears to effectively prevent the issue from occurring. It remains to be seen, however, what Apple's official response to the issue will be.

# iPhone 4 antennae: feature or bug? (video update: bug)

By Jason D. O'Grady | June 25, 2010, 7:09am PDT

**Summary**

iPhone 4 owners have been reporting poor reception and even dropped calls when holding the device by its metal frame. Apple has responded that the problem happens when holding the phone incorrectly. It's a feature not a bug.



iPhone 4 owners have been reporting (PC Mag, Gizmodo, Engadget) poor reception and even dropped calls when holding the device by its metal frame. In fact, the first five calls that I made from my iPhone 4 yesterday from The Pier in Atlantic City were dropped calls, but I was willing to overlook them, attributing the drops to the notoriously poor AT&T reception in the mall.

Stockholm Syndrome, anyone?

The iPhone 4's new metal frame — which doubles as its antennae — has been touted by Steve Jobs in his WWDC keynote as serving double duty: structural element and external antenna, which in theory should provide better reception because of its lack of obstruction.

AntennaSys Inc.'s Spencer Webb, has designed antennae for satellite communications, GPS, law enforcement surveillance applications, and wireless video for over a decade. AntennaSys Inc., a company specializing in RF consulting services, custom antenna design and specialized antenna manufacturing, writes:

The antenna structure for the cell phone is still down at the bottom (I won't address the WiFi nor GPS antennas in this blog entry). The iPhone 4 has two symmetrical slots in the stainless frame. If you short these slots, or cover them with your hand, the antenna performance will

suffer (see this video I found on YouTube).  There is no way around this, it's a design compromise that is forced by the requirements of the FCC, AT&T, Apple's marketing department and Apple's industrial designers, to name a few.

To wit, Apple responds to the antenna issue in its traditional "it's a feature not a bug" manner:

Gripping any mobile phone will result in some attenuation of its antenna performance, with certain places being worse than others depending on the placement of the antennas. This is a fact of life for every wireless phone. If you ever experience this on your iPhone 4, avoid gripping it in the lower left corner in a way that covers both sides of the black strip in the metal band, or simply use one of many available cases.

Translation: you're doing it wrong.

It hasn't been an epidemic for me (yet), and I was able place and receive several dozen calls in my first 24 hours without issue. But that could be related to Apple's bumper case which effectively blocks contact directly to the antenna frame. Could that be the reason Apple engineered its bumper case in the first place? I'm not ready to go that far yet, but so far at least, I haven't had any reception issues with my i4 other than the first few drops in the mall in A.C.

*What about you? Is your iPhone 4 reception good?*

Photo: Engadget



Update: as you can see in the video above, this happens to me 100% of the time. I hadn't noticed this in my first day's use because I've been using a black iPhone 4 bumper case exclusively. Does it happen to your iPhone 4? If so, please post your experience in the TalkBack below.

I'm completely shocked that this easily reproducable issue, didn't come up in testing. Perhaps it was because all of Apple's i4 prototypes were in cases? Regardless, it's positively an issue and I think that Apple is should include a *free* bumper case with every iPhone 4 sold to solve this obvious engineering oversight.



Jason D. O'Grady is a journalist and author specializing in mobile technology. He has published six books on Apple and mobile gadgets and his PowerPage blog has been publishing for over 15



10:36AM - "It's got integrated antennas right in the structure of the phone — it's never been done before and it's really cool engineering." Big applause. "Stainless steel for strength. Glass on the front AND back. Integrated antennas, and extraordinary build quality."



10:35AM - "Well, it turns out, there's not just one of them, there's three of them. And they are part of the structure of the phone — the stainless steel band is the structure of the phone. These is some brilliant engineering — we use that stainless steel band as part of the antenna system."

34



10:34AM - "We have a front-facing camera, microSIM, camera + LED flash, headset, and a second mic for noise cancellation. Now, because there have been a few photos around, people have asked, what's this?" The edge of the phone. "What are these lines? These don't seem like Apple."



*Voyager* | *Voyager::*  **Hard Drive Docking Solutions**
Supports all 2.5" and 3.5" SATA I/II hard drives up to 2.0TB
**Special Bundles with Hard Drives also available!**
macsales.com

 **MacInTouch Reader Reports**

Contact    Discussion    Find    Home    Reviews    Special Reports

## Reader Reports: iPhone 4

### Latest Items

Jun. 23, 2010
Jun. 24, 2010
Jun. 25, 2010

### Individual Topics

*Alphabetical / Chronological*

Commentary and Tips
Experiences
Questions

---

**Jun. 23, 2010**

*Experiences*

*MacInTouch Reader*

Don't upgrade your early arriving iPhone 4s today! It will deactivate your current phone's SIM and the iPhone4 service is not going to work until (what AT&T is telling me, "at least") tomorrow. If you do transfer your account to the new iPhone, you will be without a phone today unless you want to take a trip to the AT&T store for a new SIM (since your original one has been permanently deactivated).

*Comment on Experiences*

Jun. 24, 2010

### Experiences

#### Mark Christenson

Just opened my newly arrived iPhone 4 (showed up a day earlier than originally scheduled). Beautiful device--kind of like the difference between the old MacBooks and the new unibody models in terms of change. I am a little concerned about how well it will hold up, in particular the corners, since they seem much more exposed. Activation failed on multiple attempts, but restarting iTunes finally did the trick. It is currently synchronizing, which will take a while since I had a 16GB model which was full. Screen is beautiful, phone is way faster in response than my recently-upgraded 3GS with iOS 4. Camera response is instantaneous (or close to it) and app-switching is only a hair behind. Will be interested most to see how the battery holds up since my batter on the 3GS got hammered after the iOS "upgrade".

#### Mark Lewis

I ordered an iPhone 4 as an upgrade from a 3G on Tuesday, June 15. I carefully specified that I wanted to pick the phone up at an Apple Store on June 24. The last thing Apple displayed when I completed the order was a reminder to bring a credit card and a government ID when I picked up my phone.

On Thursday, June 17 ATT acknowledged the order with an email.

Today, June 23, FedEx delivered an iPhone 4 to me at my home.

I wonder if there's another one waiting for me tomorrow at the local Apple store, since it looks like this one came from my original attempt to upgrade from ATT, which never reached completion, but which also specified pick-up at the Apple Store.

#### William Hacker

I barely managed to get in my iPhone 4 pre-order the first day, trying off and on all day.

Since then, it's been smooth sailing. I got the email promising early delivery today. It arrived a couple of hours ago. I was mildly concerned because there weren't any FedEx delivery updates since last night, but problems with their update system didn't seem to affect their delivery.

I unwrapped it, plugged it into iTunes, and it activated and sync-ed up without problems.

So far, so good. The screen is gorgeous. It's very fast and the phone seems to work well, sounding better and apparently making me sound better on it, at least on my first call.

#### John Corso

3G reception on my iPhone 4 appears to be highly dependent on the way I hold it. A full-hand grip drives it down to one or two bars; a three-finger grip with plenty of air around the stainless steel frame/antenna results in five bars.

Anybody else seeing this?

#### Charles Park Seward

FedEx dropped off my iPhone 4 at 1 PM PDT. Everything fine. Pugged into iTunes 9.2 and it proceeded to sync and activate. I set the photos I wanted to download from iPhoto and they

Photos look great, vi̶ smooth, speaker volume much louder a̶ ̶multitasking a needed improvement. It even makes solid calls!

No complaints. Lets hope Thursday goes as smooth.


*David Bowers*

FedEx dropped my pre-ordered iPhone 4 on my doorstep (don't know how they can call that 'delivered') shortly after noon today (Wednesday), even though I had ordered it at my local AT&T store and had expected it to pick it up there. Luckily I happened to be home at the time and by 1:30 I had registered it with Apple and synced it. Everything appears to be working as advertised. A beautiful screen. Text is much easier to read since it is so much crisper. But it is now 9:20 and I'm still getting the "Waiting for activation: this may take some time" message. The guy at the AT&T store said that I would just have to wait and couldn't give me any idea of when activation might occur.


*Dave Reiser*

My iPhone 4 arrived at 1pm Eastern Time. It took me about 5 minutes to get it out of the box and hooked up to iTunes. I got a dreaded "your activation session has timed out" message immediately after entering my zip code and partial SSN. I got skilled enough to get my data entered in less than 4 seconds (total cycle time from plugging in the iPhone to error message of approx. 12 seconds), but still couldn't successfully activate.

Then I left the phone connected, shut down iTunes, and went looking for a keyboard macro generator that could enter my data and tab keys faster than I could. I spent about 10 minutes doing that, and as an afterthought decided to launch iTunes again to see what would happen. Activation succeeded the first try after launching iTunes with the phone already attached.

I suppose I could have gotten lucky. But I had spent an hour of trying 3-5 activation attempts, followed by a few minutes of doing other things, followed by more attempts, and on and on. It got even more curious when I was at an AT&T store getting my daughter's original iPhone 'upgraded' to my old 3G. One of the reps was telling someone they had to have iTunes running before attaching the iPhone 4 in order for activation to work -- exactly the opposite of my experience.

AT&T has had plenty of problems associated with upgrade eligibility confirmation, ordering, and activation, but Apple's error messages are frustratingly vague and sometimes outright inaccurate during both these processes too.


*MacInTouch*

iMovie for iPhone 4: Frequently Asked Questions (FAQ)

iMovie for iPhone 4: Exporting HD movies from iMovie for iPhone 4

iMovie for iPhone 4: Why are videos shared through the Camera Roll at a lower resolution?

That last one notes that the video is shrunk for upload:
When sharing your finished iMovie video, the Camera Roll compresses the video to 568x320 in order to improve upload performance. The full-resolution version of your video remains in the Camera Roll, and you can transfer this version back to your computer when you connect your iPhone


*MacInTouch*

John Corso wrote:

> *3G reception on my iPhone 4 appears to be highly dependent on the way I hold it.*
> *A full-hand grip drives it down to one or two bars; a three-finger grip with plenty*
> *of air around the stainless steel frame/antenna results in five bars.*

*Anybody else see     this? It's definitely not just you!*

Here's a video showing the AT&T reception dropping when held in hands:

iPhone 4 Reception Issue with Holding the Phone

iPhone 4 Reception Issue?

> *"In Mossbergs review he reported that this was a known issue and a fix is coming soon."*
>
> *"From what I remember, he just mentioned that the iP4 reports less bars than the other phones however reception was still at least as good or better...yet in this video, he completely loses reception and goes to 'Searching'...doesn't seem like software fix for that..."*

iPhone 4 Loses Reception When You Hold It By The Antenna Band?

> *Update 4: Reader Chris Sheehan did a speed test with the phone sitting down, with his hands on the phone, and one with his hands on but with a leather case on it. They're in order, and the one with his hands on the bare phone is really bad times.*
>
> *Update 6: Reader Tobias directs us to this article, in which a Danish professor who's an expert in antennas, predicted that human touch would interfere with the antenna, because it's on the outside of the phone.*
>
> *Update 7: Reader Sam says it only happens to him when touches the left side, connecting both antennas. I wonder, maybe there's some kind of weird way of holding it where you don't connect both antennas?*
>
> *Update 16: Reader Erik confirms what FameFoundry (Update 13) found, which is, if you don't touch the bottom of the phone, you're fine. But as soon as you connect the left side with the bottom, that's when reception starts to drop.*

*James Babb*

I picked up my reserved iPhone at the King of Prussia Apple Store this morning. Total time in and out was about an hour. This was much better than I expected. The crowd was large but well managed. Starbucks even provided complimentary treats and brought espresso to people in line.

The phone was activated in the store and is working fine. I'm syncing it now.

The store rep said they had enough for everybody that pre-reserved, even if they come in at the end of the day.

*Robert Mohns*

[6:42 EDT]
http://www.youtube.com/watch?v=AoNMcrxN0F4

The Rockingham Mall isn't open except to employees yet, so the whole huge line is outside. Lots of people, quiet conversation -- but the highway was a Roman chariot race. :)

(An enterprising brunch truck could make a killing selling breakfast and coffee at these events.)

Like me, a number of other people here confirm they couldn't order online, hence why they are here.

Talked to one guy, walking from the car, whose sister is first in line and arrived at 9 last night!

Broad mix of people here, not just your traditional Apple geeks. Though there are a few MacBooks out and in use.

Two hacked iPhones sharing wireless tethering  and one actual legit MyFi unit

[07:31 EDT]
Half an hour since doors opened and only five people have trickled out with new iPhones.
This does not bode well.

[08:52 EDT]
Still outside the mall but nearly to the door. For the past 20 minutes people have been
trickling out in handfuls with new iPhone 4's. Average rate about one a minute, and the lines,
though still slow, are no longer immobile. There is also an AT&T store here, and every now
and then one of their staff comes out to find AT&T preorder customers who have arrived
recently and bring them in. He says they received stock enough only for preorders, but the
Apple Store is selling both preorders and walk-ups -- and in no particular order, implying
they are quite confident of their inventory.

*Tom Lavin*

Got my phone from ATT a day early. I was waiting for activation for about an hour when I
remembered that ATT's not-very-clear instructions mentioned turning the phone on. I power
cycled the phone and it was activated. Don't know how long ATT took to activate it during
the hour I was waiting, but turning the phone off and then on after activating on the website
and waiting a decent interval may do the trick.
Second hint: you will have the choice in itunes to set up as a new phone or restore from
backup. there is no guidance on the website or user manual about this. the best idea, per a call
to Apple Support, is to do a backup of your 'old' phone (not the backup which is part of sync)
and restore from that to get all of your old settings on your new iphone.

*Cathy Scrivnor*

I ordered my iPhone 4 on June 15th. Up until late yesterday afternoon, my order said delivery
would be on June 24th. Last night, the status changed to June 30th and I finally got a tracking
number. My phone is being shipped from China! So much for pre-ordering...

*Paul Maeder*

We received my wife's new iPhone 4 yesterday afternoon and immediately tried to activate it
but were unsuccessful. iTunes worked perfectly, and I went to http://att.com/activations as
instructed by AT&T in an email sent to me the day before. Once I followed their instructions,
the iPhone indicated "No Service," and a popup said "Waiting for activation. This may take
some time."

It never activated. I called AT&T customer service (very quick answer, very friendly and
knowledgeable), but they couldn't help. The rep sent me to tech support (again very helpful)
but no solution. Tech support got a manager on the phone, who finally said it might be due to
unusually high demand and suggested I wait overnight to see if it would activate.

I did, and it didn't. So I called AT&T customer service this morning and had the issue
resolved in seconds. The rep told me to read to her the SIM card number (found in Settings
on the phone). Turns out AT&T somehow had the wrong SIM card number in my account.
She changed it and the phone activated almost immediately.

Hope this helps anyone who might have a similar experience.

*Michelle Steiner*

I arrived at the Chandler Fashion Center (shopping mall) main entrance about 4:55 this
morning, and no one was there; a few minutes later, someone else arrived. He told me that he

one else was there, ar   ne entrance was still locked. I then got tl   brilliant" idea of going to another entrance, which was the closest one to the Apple Store, arriving there about 5:15. lo and behold, there was a long line extending out into the street, an alongside the building.

I noticed that periodically, a group of people entering the mall, bypassing the line. After a while, I found out why; a blue-shirt stopped near us and asked whether any of us had pre-ordered the phone. He had us step out of line, and then led us into the building, where we got on another, much shorter, line, for those who had pre-ordered. I found out later that I was 33rd in that line.

Some blue shirts came by, asking us our names, and checking a database with their iPod Touches to make sure we had reserved a phone.

Later on, thy started leading people without reservations to another line that snaked around in the other direction. Someone got out of line and started counting the people in both lines; at about 6:45 he returned, and said there were about 800 people in both lines combined.

The store opened at 7 am, sharp, and they let in a bunch of people from the reservation line. After that, as one customer left, they let in another person; I think they let in three from the reserved line for each person from the non-reserved line.

As each person entered the store he or she was greeted by a blue shirt, who handled the sale. First stop was to the genius bar where they checked my ID against a roster of people who had reserved a phone. After confirming my reservation, the guy handed a phone to my sales rep, who then asked whether I wanted a bumper and/or a dock. I told her I wanted to get a dock, so we went to the display and she took one off the wall. I asked how much Mobile Me cost, and she said that it was $69 with the purchase of the phone, so I got that as well.

Then it was a matter of activating the phone and ringing up the sale. They also offered the service of transferring contacts from an existing phone, and had connector cables for just about every model cell phone in use today. They also offered to set up email accounts. Since I was going to transfer my backup from my 3G, I declined both offers.

I was out of there before 8:15.

**_Comment_** _on Experiences_

**_Commentary and Tips_**

_Louis Schwitzer_

When Steve announced the new iPhone, he made a major point of the stainless steel frame and it's function as an antenna. As an amateur radio operator, I had serious concerns that the human body, when holding the steel frame, could absorb most, if not all, of the rf signal energy both coming in and going out of the phone.

The conversations this morning concerning signal loss when holding the phone seem to support my concerns. Apple, at the announcement, showed off six colored "rubber" Bumpers as an accessory that would cover just the stainless steel and leave the glass areas free. While not readily available yet, these may provide a non conductive shield between the human body and the metal antenna and allow the phone to operate.

_MacInTouch_

iPhone 4 Teardown

> _We stripped down the iPhone 4 to its basic components. Apple definitely spent time giving the phone a thorough makeover, meticulously changing every little facet. We are happy to splay the fruits of their labor for your enjoyment!_

*iPad's more lim      ' 256 MB. This decision may have been    'e fairly late in*
*Apple's development cycle, because early leaked prototype phones only had 256*
*MB.*

*MacInTouch*

The iPhone 4 Camera Rocks

*The iPhone 4 is the first decent cellphone camera I?ve ever owned. I?m just*
*stunned by the image quality.*

*Below are three photos I quickly snapped minutes after opening the box. On the left*
*is the sized-down original, and on the right is a portion of the photo at 100%. Click*
*each for the original file.*

*Saam G*

There are so many threads (and more than a few movies) highlighting the reception issue of
the iPhone 4 within hours of its release that I'm wondering how the device went through
testing.

The videos show that holding the iPhone 4 by its edges causes the phone to lose reception.

http://www.youtube.com/watch?v=-ixIHyEPO5g

If all the prototypes were disguised to look like 3G phones and therefore encased in plastic
cases, is it possible that testers rarely used the phone while touching the antennae, and that
this problem was never diagnosed during testing?

Does the iPhone 4 compensate by increasing its transmission strength, generating more
radiation, when it's held in this fashion?

Curious situation.

*MacInTouch Reader*

Re:

*"When Steve announced the new iPhone, he made a major point of the stainless*
*steel frame and it's function as an antenna. As an amateur radio operator, I had*
*serious concerns that the human body, when holding the steel frame, could absorb*
*most, if not all, of the rf signal energy both coming in and going out of the phone."*

I totally agree, and will add that a rectangular frame is not a good antenna design, even
without someone touching it. With glass on both front and back, why aren't the antennas
inside? There's no metal to block it, like there was with the first iPhone.

It ranks right up there with putting the WiFi antennas inside a radio opaque titanium
PowerBook with tiny antenna apertures on the side. Not surprisingly, the plastic iBook had
substantially better reception. WiFi on the titanium PowerBooks was awful.

*Saam G*

Update on the reception issue from my buddy who has been hitting his head against the wall:

*Got off the phone with Apple. They're sending me a new one overnight. They*
*said they're aware of the issue, and it has something to do with a missing*
*protective coating on some of the parts.*

*Hopefully it's not a bunch of baloney (mmm...).*

*BTW, Apple has amazing support. Friendly, knowledgeable, professional. They*
*really do take care of you. Every time in my experience.*

*Robert Mohns*

I am completely unable to reproduce the widely reported reception problem with my iPhone 4. Two coworkers also got theirs today, and they too can't reproduce it.

Skin conductivity varies from person to person, so it may be that all of us have low conductivity, and the problems are among people with higher than usual skin conductivity.

*Comment on Commentary and Tips*

***Questions***

*Robert Mohns*

Does anyone have any experience with SquareTrade's warranty/accident coverage? They offer a $99 iPhone warranty for 2 years (or $143 for 3 years). $50 deductible for accident claims, no deductible for non-accident failures.

Considering that an iPhone 4, without subsidy, is $600-700, and that my daughter (age 11 months) has killed one iPhone in our household already :), this doesn't sound like a bad deal.

(Admittedly, by year 2 or 3 of the coverage, new phones will be out, but I note that the newly "cheap" iPhone 3GS is still $300 without an AT&T contract-subsidy.)

*Marco Markovich*

I am based in Spain, I have an iPhone 3G from Spain, I will be travelling to the US in July, is there any reason I couldn't buy an iPhone 4 there and upgrade my current phone (with the same number). iPhone 4 wont arrive here until September I think.

*Comment on Questions*

---

**Jun. 25, 2010**

***Experiences***

*C. Posey*

Pre-ordered 32G Black iPhone 4 early on first day. Arrived June 24 as expected. Thought the activation process was gonna be a PITA since I had purchased an iPhone for my wife in Jan on *my* eligibility and then I used *her* eligibility to purchase my iPhone 4. When I activated my wife's phone they made it seem like rocket science to get it activated since I had purchased it under a different number. AT&T has made a lot of progress since January and they now have specific procedures for cases where phones purchased under a different number are easily activated. The phone messages even direct you in the proper direction for said activity. I called AT&T at approx 1900 (7pm) EDT and expected to wait a long time to actually speak to someone - but it was actually only about a 3 min wait. I navigated the phone menus and was talking to a very nice female tech from Albany, Georgia in no time. Unlike my previous experience activating a new iPhone - this tech was knowledgable, helpful, and friendly. She knew exactly what to do. The whole process took about 30 mins on the phone -

end.

All in all a very positive experience with AT&T activating a new iPhone 4.


*Marc Gittleman*

I received my iPhone 4 yesterday. Great device, but I do not trust any phone not in a case (nor with a bumper). I am waiting for Incipio (no affiliation) to release the Feather for iPhone 4.

I found that my rubber Incase cover fit over the iPhone 4 quite well (thank you Gray Powell). I single hole punch to expose the flash, a punch to widen the headphone port, and one to widen the 'silent' switch give me exactly what I need until the Feather is available. I am using a screen protector from Incipio for my 3GS. It lines up well enough, and the Incase covers the edge of the screen where the film is absent.

Good luck.


*Michelle Steiner*

A possible bug when upgrading from an earlier model of iPhone:

Background: Starting with iOS 4, there is an option for an alphanumeric passcode instead of the four-digit numeric only passcode; it can be turned on at Settings-->General-->Passcode Lock by turning off "Simple Passcode". After upgrading my iPhone 3G to iOS 4, I turned off Simple Passcode and entered an alphanumeric passcode, replacing my previous 4-digit numeric passcode.

Today, after restoring my backup from the 3G to the iPhone 4, one of the first things the iPhone presented me with was the option to set a passcode; however, the only option was the 4-digit numerical passcode. I entered a passcode and confirmed it.

I then went to the Passcode Lock settings, and it asked me for my passcode, presenting me with the 4-digit numerical passcode entry form. I entered the four digits, and it rejected the passcode. I tried again, making sure that I didn't make any typographical errors. It rejected the passcode again.

I wound up having to reinstall the factory settings, and restoring from the 3G backup again. Once again, I was prompted set a passcode. This time, I tapped the Cancel button. I then again went to the Passcode Lock settings; of course, since I had not set a passcode, it did not ask me for one. I noticed that Simple Passcode was turned off. I then set an alphanumeric passcode, and confirmed it. All is working properly now.


*William Luckie*

Is it a coincidence that Apple has iPhone 4 Bumpers in stock which should mitigate any reception problems due to holding with contact to the metal frame?


*Ken K*

My iPhone 4 screen has a dramatic yellow splotch in the lower-left corner. Yikes! But I'm going to wait a few days because I saw this on a certain "insider" rumor site:

http://forums.appleinsider.com/showpost.php?p=1659997&postcount=122

> *The yellow blotches will disappear -*
> *Apple is using a bonding agent called Organofunctional Silane Z-6011 [from Dow Corning] to bond the layers of glass. Apparently, Apple (or more likely Foxconn) is shipping these products so quickly that the evaporation process is not complete. However, after one or two days of use, especially with the screen on, will complete the evaporation process and the yellow "blotches" will disappear. How do I know?*
> *I was involved in pitching Z-6011 to Apple*

*Charles Park Seward*

iPhone 4 reception:

My home has weak AT&T coverage. I can lower the bars if I wrap my hands around the phone at home. Moving closer to the Freeway (with stronger signal strength), my hands don't make any difference.

Using the Speedtest.net app, I get the same speed no matter what part of the phone I cover in a strong area. At home, the results were surprising. Covering the phone actually had much faster download speeds than the untouched phone, 113 vs. 415 kbps. On 3G in a strong area, 2607 kbps download.

But there is a great deal of difference in a good vs. bad area. With good signals, toughing doesn't matter. In areas with poor signal strength, it could be better or worse.


*Alan Lyle*

When viewing Photos all photos appear in portrait mode only! Rotating the phone does not rotate the image into landscape. Has anyone else noticed this?


*Adam Glick*

Just another data point: I got my iPhone 4 Wed. (6/23) and I can replicate the signal strength issue as described by holding the phone in my left hand, with the left corner resting in my palm. On my back porch, without holding it that way I get 5 bars. Holding it as described I can watch the bars decrease, one at a time, down to 2 bars.


*Allan Karl*

I've shot and edited what might be one of the first video shorts shot, edited and uploaded entirely from an iPhone 4 with the just released iMovie for iPhone.

First, editing that requires trimming clips is a bit awkward since dragging the clip trimming bars requires constant scrolling manually with any clip more than a few seconds. It should just automatically continue scrolling/trimming as one drags past the visible area. I hope this is fixied.

No probem uploading to YouTube. But only upload a 360P version -- even with WiFie. Took a dozen attempts to upload to MobileMe. Seems same thing. Not the full 720P resolution. Seems a waste. Love to share the TRUE quality with you.

But here's one of the first truly shot and edited iPhone/iMove for iPhone videos on release day at the Apple Carlsbad, CA store.

YouTube Version uploaded directly from iPhone 4:
http://www.youtube.com/watch?v=sLbJiPnpSb8

Seems impossible to export a full HD quality video edited from the iMovie for iPhone App - after many attempts: finally able to export to MobileMe:

http://gallery.me.com/allan#100027/Release%20Day%20-%20iPhone%204


*Allan Karl*

update to my post just moments ago. Here's my brief story of my experience prior to shooing and editing the first iPhone & iMovie for iPhone video:

http://blog.digitaltavern.com/mac-my-day/ios4-iphone-4-release-day-apple-store


*Alan Halfhill*

I have not had the left and reception problem with my new iPhone 4 even though I am left handed. I can hold the phone with no problem.

Bought mine from Best Buy. What a great experience. After trying all morning since 2 am to order online, I decided to go to the "brick and mortar" store. Walked in and ordered a phone with no line. On the 23rd they called me and gave me a time to come in to pick up the phone. I did the next day. Walked in and nobody was in line. Bought the phone and left the store a happy man.

The only problem so far was that the new rubber case for an iPhone 4 I bought for the phone interfered with the new flash. I cut the hole bigger and no problem now. Had no problems syncing the phone with the backup from my old phone. I really am impressed with the new display, camera and speed.

*Peter Parker*

My New iPhone showed up from ATT yesterday. I plugged it into my Macbook after syncing my 3G one last time. Chose the restore from backup option while the phone screen displayed the "Waiting for Activation, this may take some time" message. Restore started and once it was done I was all set to take a look at it.

It had not yet been activated, but it also did not fully restore my backup. Only one app was installed, 7Cities and my old camera roll. I plugged it back in and it showed all 7 pages of apps in iTunes so I ran Sync and it started installing the apps andcopied of the other media. Of course running an install rather than a restore, any settings or save files were lost. And a sync overwrites the old backup, though I still have it on the old phone. I likely will plug the old one back in, run a backup, make a backup of that backup and try restoring the Iphone 4.

Other than that, I'm very happy with the phone. Love the flash and better camera and the faster processor. Folders are nice, but not so excited about the way you navigate your "multi-tasking" apps. Think I liked Backgrounder better even at the expense of my battery.

Screen is beautiful, but when all is said and done, it's still an iPhone and I don't have that big an issue switching back and forth except for the camera and flash.

*Comment on Experiences*

**Commentary and Tips**

*MacInTouch*

*June 23, 2010*

*Statement by Apple on White iPhone 4*

*White models of Apple?s new iPhone® 4 have proven more challenging to manufacture than expected, and as a result they will not be available until the second half of July. The availability of the more popular iPhone 4 black models is not affected.*

*James Wages*

I'm not sure if this is going to be a PR disaster for Apple (among the noticeable percentage of users with high skin conductivity and who don't want to pay for a bumper), or a boon for range-boosting case makers like Griffin: ClearBoost

It's unfortunate Apple nply didn't enamel the antenna or put a . clear-coat on it for users who prefer their devices in their naked glory. Steve Jobs always pounds away on the external beauty points of new products in his on-stage speeches, so he logically shouldn't expect everyone to cover that loveliness with an unattractive rubber bumper. Think about it! But then again, an unobtrusive antenna-coating most assuredly was thought of by Apple engineers but rejected by Steve Jobs on the basis of it not looking as nice. Why does all this have me pondering the fanless Mac 128k design again?

To be fair, we wouldn't have the iPhone, iPad or decent looking desktop computers at all if it weren't for Jobs. And yet, we wouldn't have had his engineering failures either. Jobs probably downplayed the problem with iPhone engineers stating, "most people will buy a case -- problem solved." Funny that. An unobtrusive antenna coating seems to have been rejected but clearly a rubber bumper solution was accepted. Seems ludicrous until you start multiplying $29 times hundreds of thousands of buyers. Hmmm.

Perhaps this bad reception issue won't have too negative an impact on AAPL after all.


*Ishan Bhattacharya*

I've been reading about Apple's instructions (and Mr. Jobs' email) about how to hold the new iPhone 4 to avoid problems with voice/data connectivity.This is a design flaw, plain and simple. Apple undoubtedly knew about it, and probably, in subsequent production runs will better insulate the antennae. The condescending response from Mr. Jobs is par for the course but I find it unacceptable. I've cancelled my four iPhone orders and will wait until they fix the problem"and before I reorder the iPhones, I will ,for the first time, look at the competition. I'm also not interested in paying $120 for four Apple bumpers (when their true cost is probably $0.10 per unit). Until then, my family's four iPhone 3Gs still reliably fulfill their main function - as PHONES. Please note I have 5 iMacs, 4 Mac Pros And 2 15" MacBook Pros at home. I like Apple products, but this is beyond ridiculous. Include a functional case with the iPhone at no cost, be honest about the problem and apologize. You'll make more money that way Mr. Jobs.

    *[The letter linked below is apparently the one referenced by Ishan. -MacInTouch]*

    <u>*Steve Jobs to Lefties: Hold the iPhone 4 differently or buy a case*</u>

    *"Gripping any phone will result in some attenuation of its antenna performance, with certain places being worse than others depending on the placement of the antennas. This is a fact of life for every wireless phone. If you ever experience this on your iPhone 4, avoid gripping it in the lower left corner in a way that covers both sides of the black strip in the metal band, or simply use one of many available cases."*


*Julian Vrieslander*

Here's a heads-up for those who are migrating to iPhone 4, and transferring data from an older iPhone. When iTunes syncs the new phone with your backed-up data, it does NOT copy passwords (or at least not all of them). So if you don't have those passwords burned into your brain, make sure that they are available when you do the sync.


*Julian Vrieslander*

Several weeks ago Apple was telling us that putting Flash on our iPhones would impair performance. Maybe it was a typo, or we just misheard them - they were telling us that putting *flesh* on our phones would impair performance.

On a serious note: I tried to duplicate the reported problem by grabbing my iPhone 4 in every way possible, bridging the gaps in the frame pieces, etc. I even tried with moistened hands. I saw no effect on the signal strength indicator. This was in an area with 5 bars of signal,

however.

*Robert Mohns*

I just read a really good analysis of the iPhone 4 antenna problem from Spencer Webb, who actually designs antennas for a living. Here's a link and a key excerpt:

Apple iPhone 4 Antennas

> *Just about every cell phone in current production has the antenna located at the bottom. This insures that the radiating portion of the antenna is furthest from the head. Apple was not the first to locate the antenna on the bottom, and certainly won't be the last. The problem is that humans have their hands below their ears, so the most natural position for the hand is covering the antenna. This can't be a good design decision, can it? How can we be stuck with this conundrum? It's the FCC's fault.*
>
> *You see, when the FCC tests are run, the head is required to be in the vicinity of the phone. But, the hand is not!! And the FCC's tests are not the only tests that must be passed by a candidate product. AT&T has their own requirements for devices put on their network, and antenna efficiency is one of them. I know because I have designed quad-band GSM antennas for the AT&T network. The AT&T test similarly does not require the hand to be on the phone.*
>
> *So, naturally, the design evolved to meet requirements - and efficient transmission and reception while being held by a human hand are simply not design requirements!*
>
> *OK, back to the iPhone 4. The antenna structure for the cell phone is still down at the bottom (I won't address the WiFi nor GPS antennas in this blog entry). The iPhone 4 has two symmetrical slots in the stainless frame. If you short these slots, or cover them with your hand, the antenna performance will suffer (see this video I found on YouTube). There is no way around this, it's a design compromise that is forced by the requirements of the FCC, AT&T, Apple's marketing department and Apple's industrial designers, to name a few.*

Definitely check out that antenna video -- it demos killing reception by shorting the antennas together with a simple metal key. Nothing fancy -- just the kind you lock your house with.

*MacInTouch*

Wow: 77% Of Early iPhone 4 Buyers Upgrading From Old iPhones

> *\* 77% of iPhone 4 buyers polled in three cities (San Francisco, New York, and Minneapolis) were upgrading from old iPhones. That's up from 56% last year and 38% in 2008, and represents brand loyalty that is likely unmatched in the mobile industry.*
>
> *\* 16% of buyers were switching to AT&T from other carriers, down from 28% last year. Apple REALLY needs to add another carrier if it wants to maximize sales. (Preferably Verizon Wireless, the nation's biggest.) [...]*
>
> *\* 28% of iPhone 4 buyers owned an iPad, which confirms that the people waiting in line were the most serious of the Apple fanatics. Of the 72% who did not own an iPad, 39% said they would probably buy one within the next year, while 61% said they would not.*
>
> *\* 65% were Mac owners, down from 75% at the first iPhone launch in 2007.*

*MacInTouch Reader*

 

Before everyone goe: azy regarding iPhone 4 and antenna issu here is a good article from an expert in antenna design: <u>Apple iPhone 4 Antennas...</u>

That said, Herr Jobs response of "Just avoid holding it in that way" to an emailed question reminds of the old joke:
A man went to his physician and said, "Every time I drink my coffee, I get a stabbing pain in my right eye," the physician said, "well, have you tried taking the spoon out?"

This is a defining moment for Apple with everyone looking to take them down a notch and Jobs's blunt response was the opposite of what was needed.


*Paul Bush*

For more than a decade before my iPhone, I carried Nokia candy bar phones. Every Nokia user manual recommended putting the forefinger, left or right, in a depression on the back of the candy bar phone for optimum reception.

[....]


*Adam Bridge*

Don't <u>drop your iPhone 4</u>!

Mine didn't make it to the car. I had slipped it into a carrier on the strap of my Timbuk2 messenger bag but somehow the velcro didn't close so when i swung the bag over my head to put it into the car the iPhone fell, landed on the asphalt, and this is the result.

I'm on my way to the Apple Store to see what can be done. From the iFixIt photos the back glass should be easy to replace. But I have to say that the phone should easily survive something like this. And actually the phone works just fine but the back is shards.

You have been warned!


<u>Comment</u> *on Commentary and Tips*


**Questions**

*Jim Woodgett*

Marco Markovich might want to investigate venturing north of the 49th parallel to buy an unlocked iPhone4 in Canada direct from Apple. It will cost him more as it isn't subsidized by a carrier (e.g. the unlocked 8 GB 3GS is C$549), but will be usable in Spain with a local microSIM as it isn't locked to AT&T (or any Canadian carrier). The iPhone supposedly goes on sale in Canada in July. There may be local purchase restrictions. I'd guess these phones will also appear on eBay....


*Jonathan D.*

Robert Mohns asks about SquareTrade warranties, on the day that they issue a press release saying that 25% of iPhones break. This is an astonishing figure - given there are well over 60m iPhones out there. Over 15m broken iPhones and we have never heard of it before SquareTrade (who happen to sell warranties to save us from broken iPhones) tell us!

So, I'm sold on SquareTrade! Oh, hang on, that photo of a broken iPhone on the SquareTrade page that Robert linked to - it isn't an iPhone! It has three buttons at the bottom of the screen, not one.

In the UK we can put our phones onto our household insurance at a fraction of the cost of

these specialist warr    es. Maybe that is an option for Robert.

*Kurt Schneider*

Regarding square trade warranty service for the iphone. I had it on my wife's 3Gs, and when she dropped it creating minor cosmetic damage - they sent a box within a day - I mailed it back and 2 dalys later they issued me a check for 399 - the replacement cost of a non subsidized phone.

I now have their warranties on our 2 ipads, playstation 3, new iphone 4 and my snazzy breville convection oven ;-)

I can't recommend them highly enough. They do exactly what they say. if they can't fix it right away, they will give you cash.

Great company, and very easy to work with!!

*Donald Tsang*

I just bought the SquareTrade iPhone 4 (32G) warranty for $88 after taxes, with discount code "SLICKPHONE4".

*Gil Palen*

Though it's may be worth $3., the $30. Apple Bumper ring should insulate fingers from the Stainless antenna ring. I bought one just to have a solid grip. A side benefit may be that I have no problems with losing signal when handling it.

YMMV, but it would be interesting to hear from those who can determine if it cures their signal loss problems?

*Comment* on *Questions*

---

Contact     Discussion     Find     Home     Reviews     Special Reports

*Copyright 2010 by MacInTouch, Inc. All rights reserved.*





# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF ORANGE

**Superior Court of California, County of Orange**

751 W. Santa Ana Blvd
Santa Ana, CA 92701

E-Filing Transaction #: 22828

## PAYMENT RECEIPT

Receipt #: 10494598

| Clerk ID: mnordman | Transaction No: 10670726 | Transaction Date: 06/28/2010 | Transaction Time: 08:48:06 AM |
|---|---|---|---|

| Case Number | Fee Type | Qty | Fee Amount$ | Balance Due | Amount Paid | Remaining Balance |
|---|---|---|---|---|---|---|
| 30-2010-00384893-CU-BT-CXC | 133- Complaint or other 1st paper | 1 | $355.00 | $355.00 | $355.00 | $0.00 |
| 30-2010-00384893-CU-BT-CXC | 34 - Complex Case Fee - Plaintiff | 1 | $550.00 | $550.00 | $550.00 | $0.00 |

| | |
|---|---|
| Sales Tax: | $0.00 |
| Total: | $905.00 |

Total Rem. Bal: $0.00

E-Filing: $905.00

Total Amount Tendered: $905.00

Change Due: $0.00

Balance: $0.00

$25 will be charged for each returned check. www.occourts.org

## ORIGINAL

*51*

# SUPERIOR COURT OF CALIFORNIA

## ORANGE

**751 W. Santa Ana Blvd**

**Santa Ana , CA 92701**

**(657) 622-5300**

**www.occourts.org**

## NOTICE OF CASE ASSIGNMENT

### Case Number: 30-2010-00384893-CU-BT-CXC

Your case has been assigned for all purposes to the judicial officer indicated below. A copy of this information must be provided with the complaint or petition, and with any cross-complaint that names a new party to the underlying action.

| ASSIGNED JUDGE | COURT LOCATION | DEPARTMENT/ROOM | PHONE |
|---|---|---|---|
| Hon.  Ronald L. Bauer | Civil Complex Center | CX103 | |
| Hearing: | Date: | Time: | |

| JUDGE | COURT LOCATION | DEPARTMENT/ROOM | PHONE |
|---|---|---|---|
| Hon. | | | |

## [ x ] ADR Information attached.

# SCHEDULING INFORMATION

**Judicial Scheduling Calendar Information**

Individual courtroom information and the items listed below may be found at: www.occourts.org.

Case Information, Court Local Rules, filing fees, forms, Civil Department Calendar Scheduling Chart, Department phone numbers, Complex Civil E-filing, and Road Map to Civil Filings and Hearings.

**Ex Parte Matters**

Rules for Ex Parte Applications can be found in the California Rules of Court, rules 3.1200 through 3.1207 at: www.courtinfo.ca.gov.  Trials that are in progress have priority; therefore, you may be required to wait for your ex parte hearing.

**Noticed Motions**

\* The following local Orange County Superior Court rules are listed for your convenience:
   - Rule 307 - Telephonic Appearance Litigants - Call CourtCall, LLC at (310) 914-7884 or (888) 88-COURT.
   - Rule 380 - Fax Filing, Rule 450 - Trial Pre-Conference  (Unlimited Civil)
\* All Complex Litigation cases are subject to mandatory Electronic Filing, unless excused by the Court.
\* Request to Enter Default and Judgment are strongly encouraged to be filed as a single packet.

**Other Information**

Hearing dates and times can be found on the Civil Department Calendar Scheduling Chart.

All fees and papers must be filed in the Clerk's Office of the Court Location address listed above.

Date:  06/28/2010

Maarit H Nordman                                          , Deputy Clerk

## NOTICE OF CASE ASSIGNMENT

52

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** APPLE INC., AT&T MOBILITY LLC,
*(AVISO AL DEMANDADO):* and DOES 1-100, inclusive

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**06/25/2010** at 08:48:05 AM

Clerk of the Superior Court
By Maarit H Nordman, Deputy Clerk

**YOU ARE BEING SUED BY PLAINTIFF:** CHRISTOPHER BENSBERG on
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* behalf of himself
and all others similarly situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

**CASE NUMBER:**
*(Núm. del Caso):* 30-2010-00384893-CU-BT-CXC

SUPERIOR COURT OF CALIFORNIA
700 Civic Center Drive West

Santa Ana, CA 92701

Judge Ronald L. Bauer

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Michael Louis Kelly (SBN 82063)    (310) 536-1000  (310) 536-1001
KIRTLAND & PACKARD LLP
2361 Rosecrans Avenue, 4th Floor
El Segundo, CA 90245

**DATE:** 06/25/2010    Clerk, by _____**M. Nordman**_____ , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)* ALAN CARLSON
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

under: [ ] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
[ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Michael Louis Kelly (SBN 82063)x<br>KIRTLAND & PACKARD LLP<br>2361 Rosecrans Avenue, 4th Floor<br><br>El Segundo, CA 90245<br>TELEPHONE NO.: (310) 536-1000   FAX NO.: (310) 536-1001<br>ATTORNEY FOR *(Name):* Plaintiff Christopher Bensberg | **ELECTRONICALLY FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ORANGE<br>CIVIL COMPLEX CENTER<br><br>**Jun 25 2010**<br><br>ALAN CARLSON, Clerk of the Court<br>by M. NORDMAN |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ORANGE**
STREET ADDRESS: **700 Civic Center Drive West**
MAILING ADDRESS:
CITY AND ZIP CODE: **Santa Ana, CA 92701**
BRANCH NAME: **Central Justice Center**

CASE NAME: **BENSBERG v. APPLE INC., et al.**

| CIVIL CASE COVER SHEET<br>[x] Unlimited   [ ] Limited<br>(Amount<br>demanded<br>exceeds $25,000)   (Amount<br>demanded is<br>$25,000 or less) | Complex Case Designation<br>[ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>30-2010-00384893 |
|---|---|---|
| | | JUDGE: **JUDGE RONALD L. BAUER**<br>DEPT.: **DEPT. CX103** |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [x] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is   [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* five
5. This case [x] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 25, 2010

Michael Louis Kelly (SBN 82063)x
(TYPE OR PRINT NAME)                    ▶ *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET   Legal<br>Solutions®<br>Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|

54

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice—
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach—Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case—Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ—Administrative Mandamus
  Writ—Mandamus on Limited Court
    Case Matter
  Writ—Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal—Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late
    Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

55

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CIVIL COMPLEX CENTER**

**MINUTE ORDER**

Date: 06/30/2010                    Time: 11:08:00 AM          Dept:  CX103

Judicial Officer Presiding: Ronald L. Bauer
Clerk:  Janet E Frausto
Reporter/ERM: None
Bailiff/Court Attendant: None

Case No: **30-2010-00384893-CU-BT-CXC**  Case Init. Date: 06/25/2010
Case Title: **BENSBERG vs. Apple Inc.**

Case Category: Civil - Unlimited        Case Type: Business Tort

EVENT ID/DOCUMENT ID: 71013558
EVENT TYPE: Chambers Work

**APPEARANCES**

There are no appearances by any party.

Each party who has not paid the Complex fee of $ 550.00 as required by Government Code section 70616 shall pay the fee to the Clerk of the Court within 10 calendar days from date of this minute order. Failure to pay required fees may result in the dismissal of complaint/cross-complaint or the striking of responsive pleadings and entry of default.

The Court finds that this case is exempt from the case disposition time goals imposed by California Rule of Court, rule 3.714 due to exceptional circumstances and estimates that the maximum time required to dispose of this case will exceed twenty-four months due to the following case evaluation factors of California Rules of Court, rules 3.715 and 3.400:  Case is Complex.

The Status Conference is scheduled for 11/22/2010 at 09:00 AM in Department CX103.

Plaintiff shall, at least 10 before the hearing, file with the Court and serve on all parties of record or known to Plaintiff a brief, objective summary of the case, its procedural status, the contentions of the parties and any special considerations of which the Court should be aware. Other parties who think it necessary may also submit similar summaries three court days prior to the hearing.  DO NOT use the Case Management Statement form used for non-complex cases (Judicial Council Form CM-110).

Clerk to give notice to Plaintiff and Plaintiff to give notice to all other parties.

CLERK'S CERTIFICATE OF MAILING: I certify I am not a party to this cause, over age 18, and a copy of this document was mailed first class postage, prepaid in a sealed envelope addressed as shown, on 6/30/2010 , at Santa Ana, California.
ALAN CARLSON/Executive Officer & Clerk Of The Superior Court, by: Janet Frausto deputy.

*Janet Frausto*

Date: 06/30/2010                    MINUTE ORDER                          Page: 1
Dept: CX103                                                           Calendar No.:

Case Title: **BENSBERG vs. Apple Inc.**          Case No: **30-2010-00384893-CU-BT-CXC**

KIRTLAND & PACKARD
2361 Rosecrans Avenue Fourth Floor
El Segundo, CA  90245

57

1   PENELOPE A. PREOVOLOS (BAR NO. 87607)
    PPreovolos@mofo.com
2   ANDREW DAVID MUHLBACH (BAR NO. 175694)
    AMuhlbach@mofo.com
3   HEATHER A. MOSER (CA SBN 212686)
    HMoser@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California 94105-2482
    Telephone: 415.268.7000
6   Facsimile: 415.268.7522

7   *Attorneys for Defendant*
    APPLE INC.

8

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**07/01/2010** at 02:32:00 PM

Clerk of the Superior Court
By Rachelle Vavra,Deputy Clerk

9         SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  COUNTY OF ORANGE

11              UNLIMITED JURISDICTION

12

| | |
|---|---|
| 13  CHRISTOPHER BENSBERG on behalf of<br>himself and all others similarly situated,<br><br>15          Plaintiff,<br><br>16     v.<br><br>17  APPLE INC., AT&T MOBILITY LLC, and<br>DOES 1 - 100, inclusive,<br><br>18          Defendants. | Case No.   30-2010-00384893-CU-<br>BT-CXC<br><br>**NOTICE OF RELATED CASE** |

19

20       PLEASE TAKE NOTICE THAT pursuant to California Rules of Court, Rule 3.300, this

21  action is related to a case pending in Orange County Superior Court before the Honorable Gail

22  Andler in Department CX102, entitled *Balooch v. Apple, Inc., et al.*, Case No. 30-2010-00385372-

23  CU-BT-CXC, filed June 28, 2010 ("*Balooch*").

24       This action is related to the subsequently-filed action, *Balooch*, pursuant to California Rule of

25  Court 3.300, because it asserts the same claims against Apple, arises from the same set of

26  transactions, incidents, and events requiring the determination of the same or similar questions of law

27  and fact, and is likely to require substantial duplication of judicial resources if heard by a different

28

1    judge.  Specifically, the named plaintiff in *Balooch*, as in this action, alleges that the iPhone 4 is

2    defective in that it suffers from alleged attenuation of signal quality when handled by users.  Plaintiffs

3    in both actions also allege that Apple made representations regarding the iPhone 4 and that plaintiffs

4    were misled by those representations.  Plaintiffs in the two actions rely on the same causes of action:

5    alleged violations of the Consumers Legal Remedies Act, the Unfair Competition Law, the False

6    Advertising Law, and breach of implied warranty.[1]  The two complaints also seek the same relief –

7    damages, restitution, injunctive relief, and attorney's fees – on behalf of classes of California

8    residents who purchased an iPhone 4.[2]

9         Accordingly, the subsequently-filed action, *Balooch*, should be ordered related to this action

10   pursuant to California Rule of Court 3.300.

11

12   Dated: July 1, 2010                          PENELOPE A. PREOVOLOS
                                                   ANDREW DAVID MUHLBACH
                                                   HEATHER A. MOSER
13                                                 MORRISON & FOERSTER LLP

14

15                                        By:    /s/ Penelope A. Preovolos
                                                   PENELOPE A. PREOVOLOS
16
                                                   *Attorneys for Defendant*
17                                                 APPLE INC.

18

19

20

21

22

23

24

25   [1] In addition to these claims, the plaintiff in *Balooch* asserts claims for intentional and negligent
     misrepresentation.
26
     [2] The plaintiff in this action also seeks to represent a class of all persons who purchased an iPhone 4
27   in the United States.

28

sf-2865644                                        2
                              NOTICE OF RELATED CASE

59

1

**PROOF OF SERVICE BY MAIL**
(Code Civ. Proc. secs. 1013(a), 2015.5)

2

3        I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address
is 425 Market Street, San Francisco, California 94105-2482; I am not a party to the within cause;
I am over the age of eighteen years and I am readily familiar with Morrison & Foerster's practice

4    for collection and processing of correspondence for mailing with the United States Postal Service
and know that in the ordinary course of Morrison & Foerster's business practice the document

5    described below will be deposited with the United States Postal Service on the same date that it is
placed at Morrison & Foerster with postage thereon fully prepaid for collection and mailing.

6

7        I further declare that on the date hereof I served a copy of:

8            **NOTICE OF RELATED CASE**

9    on the following by placing a true copy thereof enclosed in a sealed envelope addressed as
follows for collection and mailing at Morrison & Foerster LLP, 425 Market Street, San Francisco,

10   California 94105-2482, in accordance with Morrison & Foerster's ordinary business practices:

11       Michael Louis Kelly
         Behram V. Parekh
         Heather M. Peterson

12       KIRTLAND & PACKARD LLP

13       2361 Rosecrans Avenue, Fourth Floor
         El Segundo, California 90245

14

15       Telephone: (310) 536-1000
         Facsimile: (310) 536-1001

16

17       *Counsel for Plaintiff* Christopher Bensberg, on behalf
         of himself and all others similarly situated

18       I declare under penalty of perjury under the laws of the State of California that the above
is true and correct.

19

20       Executed at San Francisco, California, this 1st day of July, 2010.

21

22

23   _____        _____
          Mia R. Gimenez                      /s/ Mia Gimenez

24           (typed)                           (signature)

25

26

27

28

sf-2865644

60

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Michael Louis Kelly, 82063<br>KIRTLAND & PACKARD<br>2361 Rosecrans Avenue Fourth Floor<br>El Segundo, CA 90245<br>TELEPHONE NO.: (310) 536-1000<br>ATTORNEY FOR *(Name):* Plaintiff | FOR COURT USE ONLY<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br><br>**07/06/2010** at 04:46:00 PM<br><br>Clerk of the Superior Court<br>By Rachelle Vavra,Deputy Clerk |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF<br>Superior Court of California, Orange County<br>751 W. Santa Ana Blvd.<br>Santa Ana, CA 92701 | |
| PLAINTIFF/PETITIONER: Bensberg<br><br>DEFENDANT/RESPONDENT: Apple Inc., et al. | CASE NUMBER:<br>30-2010-00384893-CU-BT-CXC |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>none |

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.

2. I served copies of: Summons, Complaint, ADR Information Package, Civil Case Cover Sheet

# BY FAX

3. a. Party served: Apple Inc.

   b. Person Served: Margaret Wilson, CT Corporation System – Person authorized to accept service of process

4. Address where the party was served:   818 West Seventh Street 2nd Floor
   Los Angeles, CA 90017

5. I served the party
   a. **by personal service.** I personally delivered the documents listed in Item 2 to the party or person authorized to receive service of process for the party (1) or *(date):* 6/29/2010        (2) at *(time):* 3:00 PM

6. The "Notice to the Person Served" (on the summons) was completed as follows:

   c. on behalf of:


   Apple Inc.


   under:    CCP 416.10 (corporation)

7. **Person who served papers**
   a. Name:        Jimmy Lizama
   b. Address:     One Legal - 194-Marin
                   504 Redwood Blvd #223
                   Novato, CA 94947
                   415-491-0606
   c. Telephone number:
   d. The fee for service was:  $ 29.00
   e. I am:
      (3) registered California process server.
          (i)   Employee or independent contractor.
          (ii)  Registration No.: 4553
          (iii) County LOS ANGELES

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date:  6/30/2010

Jimmy Lizama
(NAME OF PERSON WHO SERVED PAPERS)                              (SIGNATURE)

Form Adopted for Mandatory Use<br>Judicial Council of California POS-010<br>[Rev. Jan 1, 2007]           **PROOF OF SERVICE OF SUMMONS**           Code of Civil Procedure, § 417.10

OL# 6720816

6/

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Michael Louis Kelly, 82063<br>KIRTLAND & PACKARD<br>2361 Rosecrans Avenue Fourth Floor<br>El Segundo, CA  90245<br>TELEPHONE NO.: (310) 536-1000<br>ATTORNEY FOR *(Name):* Plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br><br>**07/06/2010** at 04:45:00 PM<br>Clerk of the Superior Court<br>By Rachelle Vavra, Deputy Clerk |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF<br>Superior Court of California, Orange County<br>751 W. Santa Ana Blvd.<br>Santa Ana, CA  92701 | |
| PLAINTIFF/PETITIONER: Bensberg<br><br>DEFENDANT/RESPONDENT: Apple Inc., et al. | CASE NUMBER:<br>30201000384893CU-BT-CXC |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>n |

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.

2. I served copies of: Summons, Complaint, Civil Case Cover Sheet, ADR Information Package

**BY FAX**

3. a. Party served:  AT&T Mobility LLC

   b. Person Served: CT Corporation System-Margaret Wilson - Person authorized to accept service of process

4. Address where the party was served:  818 West Seventh Street 2nd Floor
   Los Angeles, CA  90017

5. I served the party
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party (1) or *(date):* 6/29/2010          (2) at *(time):*  3:00 PM

6. The "Notice to the Person Served" (on the summons) was completed as follows:

   c. on behalf of:

   AT&T Mobility LLC

   under:       Other: Limited Liability Company

7. **Person who served papers**
   a. Name:          Jimmy Lizama
   b. Address:       One Legal - 194-Marin
                     504 Redwood Blvd #223
                     Novato, CA  94947
   c. Telephone number:  415-491-0606
   d. The fee for service was:  $ 29.00
   e. I am:
      (3) registered California process server.
          (i) Employee or Independent contractor.
          (ii) Registration No.: 4553
          (iii) County LOS ANGELES

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date:  7/1/2010

Jimmy Lizama
(NAME OF PERSON WHO SERVED PAPERS)                                          (SIGNATURE)

Form Adopted for Mandatory Use<br>Judicial Council of California POS-010<br>[Rev. Jan 1, 2007]                **PROOF OF SERVICE OF SUMMONS**                Code of Civil Procedure, § 417.10

OL# 6720819

1 | KIRTLAND & PACKARD LLP
Michael Louis Kelly - State Bar No. 82063
2 | Behram V. Parekh - State Bar No. 180361
Heather M. Peterson - State Bar No. 261303
3 | 2361 Rosecrans Avenue
Fourth Floor
4 | El Segundo, California 90245
Telephone: (310) 536-1000
5 | Facsimile: (310) 536-1001

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**07/06/2010** at 04:45:00 PM
Clerk of the Superior Court
By Rachelle Vavra,Deputy Clerk

6 | Attorneys for Christopher Bensberg on behalf of himself and all others similarly situated

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF ORANGE

10

11 | CHRISTOPHER BENSBERG on behalf of    ) Case No. 30-2010-00384893 CU-BT-CXC
himself and all others similarly situated,  )
12 |                                             )
                                             )  **NOTICE OF STATUS CONFERENCE**
13 |        Plaintiff,                         )
                                             )  **Date:**    **November 22, 2010**
14 |        v.                                 )  **Time:**    **9:00 a.m.**
                                             )  **Dept:**    **CX103**
15 | APPLE INC., AT&T MOBILITY LLC, and      )
DOES 1 - 100, inclusive,                    )  Complaint Filed:    June 25, 2010
16 |                                             )
        Defendant.                           )
17 | _____ )

18 |        PLEASE TAKE NOTICE that the Court has scheduled the above-entitled matter for a

19 | Status Conference on November 22, 2010, at 9:00 a.m., in Department CX103 of the Orange

20 | County Superior Court located at 700 Civic Center Drive West, Santa Ana, California.  Please also

21 | take notice that the case has been deemed complex and the complex fee of $550 is due within 10

22 | days of receipt of this Minute Order.  The Court's Minute Order dated June 30, 2010 is attached

23 | hereto for reference.

24 | DATED:  July 6, 2010                    KIRTLAND & PACKARD LLP

25

26 |                                        By:  _Heather Peterson_
                                            _____
27 |                                        HEATHER M. PETERSON
                                            Attorneys for Christopher Bensberg on
28 |                                        behalf of himself and all others similarly
                                            situated

02225-00001  0141849.01

NOTICE OF STATUS CONFERENCE

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CIVIL COMPLEX CENTER**

**MINUTE ORDER**

Date: 06/30/2010                    Time: 11:08:00 AM          Dept: CX103

Judicial Officer Presiding: Ronald L. Bauer
Clerk: Janet E Frausto
Reporter/ERM: None
Bailiff/Court Attendant: None

Case No: **30-2010-00384893-CU-BT-CXC**  Case Init. Date: 06/25/2010
Case Title: **BENSBERG vs. Apple Inc.**

Case Category: Civil - Unlimited        Case Type: Business Tort

RECEIVED
JUL 0 2 2010
*COPY TO CALENDAR*
KIRTLAND & PACKARD

EVENT ID/DOCUMENT ID: 71013558
**EVENT TYPE:** Chambers Work

**APPEARANCES**

There are no appearances by any party.

Each party who has not paid the Complex fee of $ 550.00 as required by Government Code section 70616 shall pay the fee to the Clerk of the Court within 10 calendar days from date of this minute order. Failure to pay required fees may result in the dismissal of complaint/cross-complaint or the striking of responsive pleadings and entry of default.

The Court finds that this case is exempt from the case disposition time goals imposed by California Rule of Court, rule 3.714 due to exceptional circumstances and estimates that the maximum time required to dispose of this case will exceed twenty-four months due to the following case evaluation factors of California Rules of Court, rules 3.715 and 3.400: Case is Complex.

The Status Conference is scheduled for 11/22/2010 at 09:00 AM in Department CX103.

Plaintiff shall, at least 10 before the hearing, file with the Court and serve on all parties of record or known to Plaintiff a brief, objective summary of the case, its procedural status, the contentions of the parties and any special considerations of which the Court should be aware. Other parties who think it necessary may also submit similar summaries three court days prior to the hearing. DO NOT use the Case Management Statement form used for non-complex cases (Judicial Council Form CM-110).

Clerk to give notice to Plaintiff and Plaintiff to give notice to all other parties.

CLERK'S CERTIFICATE OF MAILING: I certify I am not a party to this cause, over age 18, and a copy of this document was mailed first class postage, prepaid in a sealed envelope addressed as shown, on 6/30/2010 , at Santa Ana, California.
ALAN CARLSON/Executive Officer & Clerk Of The Superior Court, by: Janet Frausto  deputy.

*Janet Frausto*

Date: 06/30/2010                    MINUTE ORDER                    Page: 1
Dept: CX103                                                         Calendar No.:

64

Case Title: **BENSBERG vs. Apple Inc.**          Case No: **30-2010-00384893-CU-BT-CXC**

**KIRTLAND & PACKARD**
2361 Rosecrans Avenue Fourth Floor
El Segundo, CA  90245

65

PROOF OF SERVICE
(CCP §§ 1010.6, 1011, 1013, 1013a, 2015.5, )
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, the undersigned, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 2361 Rosecrans Avenue, Fourth Floor, El Segundo, California 90245. I am "readily familiar" with my employer's practice of collection and processing of correspondence and documents for mailing with the United States Postal Service, mailing via overnight delivery, transmission by facsimile machine, and delivery by hand.

On July 6, 2010, I served a copy of each of the documents listed below by placing said copies for processing as indicated herein: NOTICE OF STATUS CONFERENCE

(✓)   U.S. MAIL:  The correspondence or documents were placed in sealed, labeled envelopes with postage thereon fully prepaid on the above date and placed for collection and mailing at my place of business to be deposited with the U.S. Postal Service at El Segundo, California on this same date in the ordinary course of business.

PERSONS OR PARTIES SERVED:

*Attorneys for Defendant Apple Inc.*
Penelope A. Preovolos (SBN 86607)
Ppreovolos@mofo.com
Andrew David Muhlbach (SBN 175694)
Amuhlbach@mofo.com
Heather A. Moser (SBN 212686)
Hmoser@mofo.com
MORRISON & FOERSTER LLP
425 Markeet Street
San Francisco, CA 94105-2482
tel (415) 268-7000
fax (415) 268-7522

(✓)   (State)  I certify (or declare) under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 6, 2010.

( )   (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Marti F. Clark, Declarant

# EXHIBIT C

1  Van V. Nguyen (CSB 222832)
      vnguyen@crowell.com
2  CROWELL & MORING LLP
   3 Park Plaza, 20th Floor
3  Irvine, CA  92614
   Telephone:  (949)263-8400
4  Facsimile:   (949) 263-8414

5

   Kathleen Taylor Sooy
6     ksooy@crowell.com
   CROWELL & MORING LLP
7  1001 Pennsylvania Avenue, NW
   Washington, DC  20004
8  Telephone:  (202) 624-2500
   Facsimile:  (202) 628-5116

9  Counsel for AT&T Mobility LLC

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13                   **SOUTHERN DIVISION**

14  CHRISTOPHER BENSBERG, on        Case No.
    behalf of himself and all others
15  similarly situated,              **CLASS ACTION**

16            Plaintiff,             **DECLARATION OF BRIAN
                                     IRELAND IN SUPPORT OF**
17            v.                     **NOTICE OF REMOVAL OF
                                     DEFENDANT AT&T MOBILITY**
18  APPLE, INC., AT&T MOBILITY,      **LLC**
    LLC, and DOES 1 through 100,
19  inclusive,                       Complaint Filed:  June 25, 2010

20            Defendants.

21

22

23                  **REDACTED PUBLIC VERSION**

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DECLARATION OF BRIAN IRELAND IN SUPPORT OF
NOTICE OF REMOVAL OF AT&T MOBILITY LLC

67

1      I, Brian Ireland, declare as follows:

2      1.      I am over 18 years of age and am competent to testify to the facts

3 herein, which are based upon my personal knowledge or upon information provided

4 to me by others at AT&T Mobility LLC ("ATTM").

5      2.      I am employed by ATTM as Director, Sales Operations.  I have held

6 this position since May of 2005.  In the course of my duties, I review ATTM's sales

7 data, including sales data for the iPhone 4.

8      3.      I, with the assistance of others at ATTM, compiled records of ATTM's

9 total iPhone 4 sales since the iPhone 4 was first launched on June 24, 2010.

10      4.      According to ATTM's records, ATTM has sold ███████████

11 ████ iPhone 4 units in California from June 24, 2010 to the present.

12      5.      According to ATTM's records, ATTM has also sold ██████████

13 ████ iPhone 4 units nationwide (excluding California) from June 24, 2010 to the

14 present.

15      6.      The average retail price of an iPhone 4 sold by ATTM is

16 approximately $200.

17      7.      ATTM treats sales information, including information given in

18 paragraphs 4 and 5 above, as confidential.  ATTM takes measures in the ordinary

19 course of business to ensure its confidentiality.

20      I declare under penalty of perjury under the laws of the United States of

21 America and the State of California that the foregoing is true and correct.

22      Executed on July 28, 2010 at Atlanta, Georgia.

23

24                                          _____

25                                          Brian Ireland

26 01070200000031\12537086.1

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Cormac J. Carney  and the assigned discovery Magistrate Judge is Rosalyn M. Chapman.

The case number on all documents filed with the Court should read as follows:

## SACV10- 1146 CJC  (RCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [X] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| **312 N. Spring St., Rm. G-8** | **411 West Fourth St., Rm. 1-053** | **3470 Twelfth St., Rm. 134** |
| **Los Angeles, CA 90012** | **Santa Ana, CA 92701-4516** | **Riverside, CA 92501** |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Christopher Bensberg, on behalf of himself and all others similarly situated

**DEFENDANTS**
Apple, Inc., AT&T Mobility LLC, and Does 1-100 inclusive

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Kirkland & Packard, 2361 Rosecrans Avenue, Fourth Floor, El Segundo, CA 90245

Attorneys (If Known)
AT&T Mobility LLC:  Crowell & Moring LLP, 3 Park Plaza, 20th Floor, Irvine, CA, 92614.
Apple, Inc.: Morrison & Foerster LLP, 425 Market Street, San Francisco, CA 95105.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes   ☐ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ Unspecified damages over $5 mil.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☒ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

## SACV10 -1146 CJC (RCx)

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Apple Inc.: Santa Clara County, California<br>AT&T Mobility LLC: Delaware and Georgia |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Allegedly, Orange County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  July 26, 2010

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |